[Crim. No. 3006.   Second Appellate District, Division One.—February 24, 1938.]

THE PEOPLE, Respondent, ·v. ANGELO· M. YOUNG, Appellant.

John Leo Harris and Malcolm Harris for Appellant.

U. S. Webb, Attorney General, and Paul D. McCormick, Deputy Attorney-General, for Respondent.

WHITE, J.—The defendant was convicted of the offense of grand theft, as charged in an amended information, and also was found guilty on two counts of forgery, as alleged in a separate information, both pleadings having been consolidated for trial before the same jury. From the judgments aforesaid and the order denying his motion for a new trial, defendant prosecutes this appeal.

In urging a reversal, appellant asserts that the evidence was insufficient to warrant the jury in finding him guilty of any of the charged offenses; that the court erred in refusing to permit him to show the general course of business relations that had existed between defendant and the finance company alleged to have been defrauded, for some time prior to the dates of the transactions here in question; and finally, that the district attorney was guilty of prejudicial misconduct during the examination of certain defense witnesses.

With reference to the charge of grand theft, the testimony discloses that appellant was engaged in the business of selling radios, refrigerators and electrical appliances in the city of Los Angeles under the firm name of Angelus Radio Shop. Part of the premises occupied by appellant's business was leased to the Citizens Insurance Agency, which latter company was engaged in the business of discounting commercial paper, such as instalment sales contracts, by advancing money upon and taking assignments of such paper. From evidence introduced on behalf of the prosecution, it appears that about March 10, 1936, one Cohen placed an order with appellant for an electric refrigerator, and gave to appellant as a deposit a check for $55. So far, the negotiations were oral, and it was agreed at that time that the

refrigerator would be delivered in thirty days. On the following May 1st, Cohen gave to appellant the balance due on the contract for the delivery of the refrigerator, being the sum of $305, at which time it was agreed that the refrigerator should be delivered immediately. However, delivery was not made to Cohen by appellant until August 21, 1936. The case number of the electric refrigerator delivered to Cohen, the materiality of which will become apparent herein, was 5359351. The evidence of the prosecution then discloses that about August 20th or 21st, at about the time appellant caused delivery of the aforesaid refrigerator to Cohen, the former approached a Mr. and Mrs. Ferguson with reference to their purchasing an electric refrigerator. After signing a contract for the purchase of such a refrigerator, the Fergusons came to appellant, and in accordance with their option to cancel such contract, stated that they desired to terminate the deal, whereupon appellant signed a cancellation of the Ferguson contract. Although the refrigerator had never been delivered to the Fergusons, appellant represented to the discount company that delivery had been made, and that the purchase contract was in full force and effect. The materiality of the case number of the refrigerator now becomes apparent, because the Ferguson contract which appellant presented to the finance company, and upon which the former received a check for $337.05 from the latter after assigning the contract to the discount company, was for a refrigerator bearing case number 5359351, which was the number of the refrigerator appellant had previously delivered to Cohen. Thus we see from the evidence introduced by the prosecution, appellant obtained $337.05 from the finance company upon a canceled contract and upon a refrigerator he had previously delivered to Cohen and for which Cohen had paid him in full.

With respect to the evidence introduced by the prosecution in support of count I of the separate information charging forgery, the same had to do with a contract between appellant's Angelus Radio Shop and one R. H. Rhea. This evidence was to the effect that appellant represented to the finance company that Rhea was employed in the office of the Los Angeles city auditor; that Rhea wanted a refrigerator, but did not have the money with which to buy it; that if the finance company would give appellant the money

with which to buy the machine for Rhea, that the latter would sign a conditional sales contract, which instrument appellant stated he would give to the finance company to secure the money obtained with which to purchase the refrigerator. Subsequently, after stating to the finance company that the refrigerator had been delivered to Rhea, appellant brought in the contract. For this contract appellant was given a check for $116.58. Later, when the contract became delinquent, and appellant was asked by the finance company agent why the first payment thereunder was not made, appellant stated he would contact Rhea, obtain the payment from him and bring it in; and appellant did bring in a payment on the Rhea contract. When the second payment became delinquent, the same procedure was gone through. The refrigerator number inserted by appellant in the Rhea contract was 6256876. There is substantial evidence in the record to indicate that on July 31, 1936, nearly a month before the execution of the Rhea contract, the General Electric Supply Corporation sold to appellant's Angelus Radio Shop an electric refrigerator bearing the same number that was inserted by appellant in the Rhea contract. There was testimony that no one by the name of Rhea was living on the property located at the address given in the contract, and that there was no employee in the Los Angeles city auditor's office by the name of Rhea on or about the date charged in the information or at any other time during the past nineteen years. It further appears from the testimony of certain police officers that a diligent search of the records of the city of Los Angeles directories, telephone books, etc., failed to disclose a person by the name of R. H. Rhea. The witness O'Callahan, as a representative of the finance company, testified that he believed the Rhea contract was *bona fide* and that he relied upon the representations of appellant in reference thereto, for which reason, he testified, he gave appellant the check for the contract.

With reference to count II of the second or separate information, the prosecution introduced evidence that on or about August 1, 1936, appellant told the finance company that he could sell an electric refrigerator to a certain Willard D. Robins, and that he needed the money to buy the refrigerator. According to the evidence, appellant further stated

that he had known Robins for some time; that the latter worked for the Los Angeles Paper Box Company and would undoubtedly make the payments on his contract. This conversation took place during the latter part of July. It was testified that on or about August 1, 1936, appellant brought in a contract to the finance company, this contract being between the appellant's Angelus Radio Shop and Robins, for an electric refrigerator, and at that time appellant assigned the contract to the finance company, telling the representative thereof that the refrigerator had been delivered. Robins' name and also his address were on the contract at that time. Prior to that time according to certain evidence, and upon appellant's promise to bring in the contract, the latter obtained from the finance company the sum of $121.68. It further appears that three payments were made on the Robins contract, which payments were delivered to the finance company by appellant. The finance company's authorized agent testified that he believed the Robins contract was *bona fide* and that he relied upon the representations made by appellant, for which reason he gave appellant the money above referred to. From certain of the testimony, it appears that no one by the name of Willard D. Robins worked for the Los Angeles Paper Box Company during the month of August, 1936, or during the month of July, 1936, or at any time as far back as January 31, 1934.

It is obvious, from the circumstances of this case and the testimony which had been recited, that the jury were reasonably justified in drawing the inference that all three of the transactions charged in the information were fraudulent and fictitious, and were had for the sole purpose of enabling the appellant, on the strength of apparently *bona fide* sales, to secure for himself the moneys in question. The question of intent is one for the jury; and where the evidence, as here, is such that the jury could reasonably draw therefrom the inference of guilty intent, its verdict cannot be disturbed by the appellate tribunal. (*People* v. *Remsberg,* 92 Cal. App. 615, 617 [268 Pac. 672]; *People* v. *Swalm,* 80 Cal. 46, 49 [22 Pac. 67, 13 Am. St. Rep. 96]; *People* v. *Rushing,* 130 Cal. 449 [62 Pac. 742, 80 Am. St. Rep. 141].) While it is true that evidence in conflict with the foregoing was presented by the appellant, who also testified in his own behalf, nevertheless it was the jury's right to reject

appellant's denial of any wrongdoing and to accept, as well as act upon, the testimony of witnesses who contradicted him. Reviewing judges are, obviously, in no position to determine the credit which should be accorded to witnesses or to weigh their testimony. Undoubtedly for that reason our Constitution provides that the appellate courts are not authorized to review evidence, except where, on its face, it may justly be held that it is insufficient to support the ultimate issue involved, in which case it is not a review of a question of fact, but purely one of law. (*People* v. *Haydon,* 18 Cal. App. 543, 553 [123 Pac. 1102].) Carrying out the spirit and intent of this constitutional provision, the legislature has ordained that the jury are the exclusive judges of the credibility of witnesses (Code Civ. Proc., sec. 1847) and are the judges of the effect and value of evidence addressed to them, except in those instances where it is declared by law that it shall be conclusive. (Code Civ. Proc., sec. 2061.) It necessarily follows from the rules just noted that the jury in this case were authorized, if they conscientiously felt warranted in so doing, after full and fair consideration thereof, to reject any testimony which might have been given contradictory to that produced by the prosecution and herein set forth. (*People* v. *Phelan,* 123 Cal. 551, 557 [56 Pac. 424]; *People* v. *Wright,* 4 Cal. App. 704, 706 [89 Pac. 364]; *People* v. *Turpin,* 10 Cal. App. 526, 530 [102 Pac. 680]; *Clark* v. *Tulare L. D. Co.,* 14 Cal. App. 414, 432 [112 Pac. 564].)

Appellant's second contention, that the court erred in refusing to permit him to show the general course of business between himself and the finance company, is equally without merit. The offer of proof made by appellant at the trial indicates that he proposed to show that for some two years prior to the dates mentioned in the informations, he had what he termed a "purchasing account" with the finance company, through which he was permitted to borrow money with which to purchase refrigerators, radios, etc.; that when money was paid to appellant by the finance company it was not paid upon or by reason of a specific contract, and therefore that no money was parted with by the finance company because of any representations made of or concerning any specific contract. The ruling of the trial court sustaining objection to the proffered proof was correct, because there was clear and unequivocal evidence showing definitely

that the moneys mentioned in the information were given for certain specific contracts, and further, that the contracts were assigned to the finance company. The evidence also shows without contradiction that the contracts set forth in two counts of the information were fraudulent and fictitious. This state of the record effectually concludes appellant's contention and argument in this particular. The evidence was immaterial and incompetent, and properly rejected.

Appellant finally contends that the district attorney was guilty of prejudicial misconduct during his cross-examination of defense witnesses. Opening the cross-examination of a witness called on behalf of the defendant, the district attorney inquired, "Do you know what perjury is?"; to which the witness responded in the affirmative. Upon objection, the court properly sustained the same, and struck the answer from the record. During the cross-examination of appellant concerning delivery of the refrigerator in the Cohen transaction, the district attorney propounded the following interrogatory: "And it was not because Mr. Cohen agreed to call off any prosecution against you if you delivered that immediately, was it?" A timely objection interposed by appellant's counsel was promptly sustained. Nothwithstanding the court's action in sustaining this objection to the foregoing question, the district attorney persisted in asking the following: "And the reason you delivered it was because you were called into the district attorney's office by Mr. Cohen, is that correct?" Again the court sustained defendant's objection. On another occasion, when defendant denied having a certain conversation, the district attorney asked, "Then this is not true?"; to which query objection was made and sustained. During the cross-examination of a character witness called in behalf of defendant, the following occurred: "Q. Would your answer be the same if I told you that this defendant was arrested for robbery?" Objection to this question was sustained.

As indicated by the rulings of the trial court, these questions were improper, and in two instances, particularly as to the last interrogatory, neither ignorance nor zeal justifies or excuses the asking thereof. The evil thereof was accentuated by the fact that appellant had admitted on cross-examination a prior conviction of the crime of forgery, in the face of which it was highly improper for the district attorney to in-

sinuate or imply to the jury by his question that the appellant had also been arrested for robbery, when, so far as the record here discloses, there was not a scintilla of evidence to support the implication sought to be conveyed to the jury that appellant had been arrested for robbery. While a district attorney may in good faith cross-examine a witness to a defendant's character with reference to his knowledge of specific acts inconsistent with the character testified to, it is highly improper for him to ask such questions where it is apparent that his sole purpose is to get before the jury the intimation that the defendant has been guilty of specific acts of misconduct, when the prosecuting officer has no information warranting a reasonable belief upon his part that the fact is as implied by the questions; and where such misconduct operates to prejudice the substantial rights of a defendant, appellate courts are disposed to reverse judgments of conviction. There are cases where the misconduct is of such a nature that an admonition from the court would not serve to effectually cure the injury and prejudice resulting therefrom. In such cases, it is not required that a defendant request the court to instruct the jury to disregard the questions asked, the statements made, or the answers given. The misconduct here set forth is not of that character, and it was therefore incumbent upon appellant to request the trial judge to so admonish the jury. The questions were improper and the action of the district attorney in asking some of them was an act of misconduct on his part; but the record shows that the court in each instance sustained the defendant's objection to the question, and further shows that while the defendant's counsel in some instances assigned the acts of the district attorney as misconduct, at no time was a request made of the court to admonish or instruct the jury to disregard the same. Notwithstanding this, the court gave the jury the following instruction:

" . . . But while you are the sole and exclusive judges of the facts and of the weight of evidence, you are to judge of the facts upon the testimony and other evidence produced here in court. If any evidence has been admitted and afterwards stricken out, you must disregard the matter so stricken out, entirely, *and if any counsel has intimated by questions, which the court has not permitted to be answered, that certain things are, or are not, true, you must disregard such*

*questions and refrain from any inferences based upon them.* If counsel, upon either side, have made any statements in your presence concerning the facts in the case, you must be careful not to regard such statements as evidence, and must look entirely to the proof in ascertaining what the facts are. . . . "

It is to be assumed that the jury heeded this admonition, with respect not only to the precise questions here set forth, but also as to any other questions of doubtful propriety respecting which objections were made and sustained by the court. (*People* v. *Burke,* 18 Cal. App. 72 [122 Pac. 435]; *People* v. *Fodera,* 33 Cal. App. 8, 13 [164 Pac. 22].) It is sufficient to say that the evidence sought to be elicited was incompetent and its proffered introduction by the district attorney improper, but that the court promptly sustained an objection to it and that the defendant did not ask for an instruction that the jury disregard it. The error and impropriety of its offer in evidence must therefore be held to have been cured by the foregoing instruction of the court in its final charge to the jury. Moreover, under section 4½ of article VI of the Constitution, it would be our duty to affirm the judgment of conviction. The evidence shows beyond all question that appellant obtained the money and property of the finance company by false and fraudulent representations, and by the presentation of fraudulent and fictitious contracts. The evidence herein recited and other facts disclosed upon a review of the entire record, including the evidence, so far from showing that there has been a miscarriage of justice, tend strongly to prove the guilt of appellant, and that no other verdict could have been reached if the alleged misconduct of the district attorney had not been committed.

After reviewing the entire record, including the transcript of the evidence, we do not find that any error has been committed in the trial of the action which has deprived appellant of the fair trial to which he is entitled, nor do we believe that the verdict has resulted in a miscarriage of justice; consequently we are without authority to disturb the jury's finding.

The judgments and orders appealed from are therefore affirmed.

York, P. J., and Doran, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on March 25, 1938. Houser, J., voted for a hearing.