[Crim. No. 4344.  Second Dist., Div. Two.  Feb. 10, 1950.]

THE PEOPLE, Respondent, v. HENRY PAUL SCHOELLER, Appellant.

56

Ray L. Smith and Wm. C. Schaper for Appellant.

Fred N. Howser, Attorney General, Frank Richards, Deputy Attorney General, William E. Simpson, District Attorney, Jere J. Sullivan and Richard S. Chapman, Deputy District Attorneys, for Respondent.

WILSON, J.—Defendant and one Fred DeFrenn were convicted on three counts of violating section 424 of the Penal Code. Their motion for new trial was denied. Defendants appealed from the order denying such motion and from the judgment and sentence. Subsequent to the filing of the appeal DeFrenn died and his appeal has been dismissed.

The sole question for determination is whether the evidence supports the conviction. Defendant contends that there is no evidence (1) that he was a "qualified and acting person charged with the receipt, safe-keeping and transfer of public moneys"; (2) "that he had in his possession and under his control in his capacity as an officer of the District chargeable by law, a certain thing of value belonging to the District" and (3) "that he wilfully, unlawfully, feloniously and without authority of law did appropriate said thing of value to his own use thereby making a profit therefrom."

The pertinent portions of section 424 of the Penal Code are as follows: "Each officer of this state, or of any county,

city, town, or district of this state, and every other person charged with the receipt, safe-keeping, transfer, or disbursement of public moneys, who either:— 1. Without authority of law, appropriates the same, or any portion thereof, to his own use, or to the use of another; or, 2. Loans the same or any portion thereof; makes any profit out of, or uses the same for any purpose not authorized by law; . . . Is punishable by imprisonment in the state prison for not less than one nor more than ten years, and is disqualified from holding any office in this state.''

▮▮▮ Defendant admits that he was secretary of the board of directors of the Palmdale Irrigation District but asserts that in such capacity he was not an officer of the district but a mere clerk in its employ; that the only officers of the district are the treasurer, collector and assessor, who are elective officers; that he received no compensation for acting as secretary; he had no power to draw checks and he was never sworn in as an officer of the district, nor did he post any bond.

Defendant testified he was first employed by the Palmdale Irrigation District in June, 1926, as an engineer; he was elected secretary of the board about 1933; he took care of all collections, with the assistance of the women in the office, signed receipts, papers and documents as deputy collector; performed the services of both secretary and collector; he made bank deposits but did not sign checks; bills were paid by a warrant drawn on the treasurer signed by the president and secretary of the board and the treasurer issued a check; the collector and treasurer did nothing.

Mr. McBride testified he was elected treasurer in 1930 and was also the collector; he had nothing to do with collection or recording of collections; he prepared no financial statements, handled no funds and kept no books or records; his only duty consisted of signing the checks when they were presented with the voucher attached signed by the secretary and the president of the board; he had never in the 17 years he had been in office prepared a collector's or a treasurer's report.

In addition to the three elective officers provided for by statute the board of directors of an irrigation district has the power to ''[e]mploy agents, officers and employees as required'' and to ''[p]rescribe their duties and fix their salaries.'' (Wat. Code, § 21185.)  The board appointed defendant to the office of secretary of the board and his duties included all those functions ordinarily performed by the col-

lector and treasurer, with the exception of drawing checks. He acted as deputy collector and signed receipts and documents as an officer of the district, presumably with the consent and approval of the board of directors. Defendant was not only an officer of the district but he was also charged with the receipt and safekeeping of public moneys.

The three transactions involved in the indictment are as follows:

■ *The O'Neill Transaction.* In March, 1943, the O'Neills purchased some property from Mr. Walters. Walters was indebted to the district for delinquent assessments and this obligation the O'Neills assumed as part of the purchase price. They executed a promissory note to the district for $1,000, secured by a deed of trust. The O'Neills made one interest payment to the district and prior to the time the second payment became due defendant told Mrs. O'Neill that Mr. De-Frenn had purchased the paper and to make future payments to him. Defendant also advised Mr. O'Neill to the same effect whereupon O'Neill requested a letter from the district that such was the case. Defendant said he would send the letter but failed to do so. The O'Neills made two interest payments to DeFrenn. When the principal payment became due defendant told the O'Neills to make their payments to the district. The balance of the principal and interest payments were made to the district. DeFrenn was a director of the Palmdale Irrigation District. The O'Neill note was assigned to DeFrenn's wife on January 6, 1944, the endorsement on the note being signed "Palmdale Irrigation District, H. P. Schoeller, Sec'." The note was subsequently reassigned to the district by Norine DeFrenn. In the cash received record of the district under date of January 6, 1944, is an entry reading "J. F. O'Neill (Bal. on Walters purchase) $800.00." Above the entry is written the words "advance on loan" in different colored ink and written at a different time. The foregoing entry was offset by a cash disbursement of $800 in January, 1945, by a check payable to Norine DeFrenn. It is defendant's contention that DeFrenn loaned the district $800 and the O'Neill note was assigned to him for security. There is, however, nothing in the minutes of the board of directors concerning the transaction and defendant admitted that in accepting the check for $800 from DeFrenn he was not doing so under any authority granted by the board. DeFrenn likewise had no recollection that the matter of his loaning money to the district was ever discussed by the

board of directors. The district did not execute any note to DeFrenn as evidence of the loan. From the foregoing it must be concluded that the evidence was sufficient to find defendant guilty of selling the O'Neill note to DeFrenn for $800 and that defendant and DeFrenn appropriated the O'Neill trust deed note to their own use and benefit and for a purpose not authorized by law.

*The Winter Transaction.* In April, 1943 an escrow was entered into between Mr. and Mrs. Winter and the Palmdale Irrigation District whereby certain property belonging to the Winters was exchanged for property owned by the district. In addition to executing a deed to the district covering the real property conveyed by them, the Winters also executed a promissory note in the amount of $1,300 in favor of the district, secured by a deed of trust, which note represented the difference in the value of the two pieces of property. The escrow instructions were signed ''Palmdale Irrigation District, by H. P. Schoeller, Secretary.'' On June 14, 1943, the Winter note was assigned to Norine DeFrenn, the endorsement being signed: ''Palmdale Irrigation District By Fred DeFrenn, President, H. P. Schoeller, Secretary.'' On the same date DeFrenn gave the district his check for $1,000. The check was deposited to the credit of the district but the receipt was not recorded in the books. The Winter note was subsequently paid in full to DeFrenn. The minutes of the board of directors of the district under date of March 3, 1943, contain the following entry: ''Mr. Frank Winters requested that the District deed him the 12 acres in lot 3, tract 7682 and take a deed from him on his five acres in alfalfa and a trust deed for a cash payment of $1,000.'' The words ''trust deed for'' are crossed out in the minutes. It is defendant's contention that he knew nothing about the Winters matter except a memorandum given to him at the board meeting calling for $1,000 for the transfer of the property; that Winter did not have the necessary $1,000 and wanted time payments; that the district was not a party to the escrow and the note and deed were erroneously sent to the district and it was therefore necessary to assign them to DeFrenn. The evidence refutes defendant's contentions. The district was a party to the escrow and the defendant signed the instructions which contained a valuation on each piece of property, the difference between the two being $1,300.

*The Bright Transaction.* Mr. and Mrs. Bright discussed with defendant and DeFrenn the purchase of property

in the district.   On May 6, 1946, Mrs. Bright made a down payment of $200 on the transaction.   The escrow was handled by the Sipherd Service.   The escrow instructions were not signed by any of the parties and the matter was handled by Sipherd upon the verbal instructions of defendant.   On June 27, 1946, three deeds were recorded covering the same piece of property:   (1) deed dated May 6, 1946, from Palmdale Irrigation District to Robert Sargent and Alice Sargent, executed by defendant as secretary and DeFrenn as president of the district;   (2)   deed dated May 7, 1946, from Lester Bright and Francis Bright to Title Insurance and Trust Company with Fred DeFrenn and Norine DeFrenn as beneficiaries, to secure a promissory note in the amount of $300 executed by the Brights and payable to the DeFrenns;   (3) deed dated May 10, 1946, from Robert Sargent and Alice Sargent to Lester Bright and Francis Bright.   Defendant gave Sipherd the $200 check of the Brights and at the close of escrow Sipherd sent the district a check for $172.05 with a statement of the escrow charges.   Sargent is defendant's brother-in-law.   He advanced no money to the district in the transaction and received no money.   He testified that he and defendant had a working agreement in relation to defendant's buying for his account; that prior to the Bright deal he owed defendant $1,000 on prior deals; that the arrangement he had with defendant was that he (defendant) would finance the deal and Sargent would pay on demand; that after this purchase he owed defendant an additional $200 and got credit for the $300 ''we profited.''   There is no record in the cash receipt ledger of the receipt of $200 from Sargent.   There is no record in the minutes of any resolutions by the board of directors concerning the sale of property to either Sargent or Bright.   DeFrenn paid defendant $300.   The Brights paid $500 for the property, borrowing $300 from DeFrenn, but the district received only $172.05 on the transaction.   Defendant contends that the district was not a party to the transaction; that Sargent purchased the property from the district and subsequenly sold it to the Brights for $500.   The very fact that the entire transaction was handled in one escrow at the same time is sufficient answer to such a fallacious argument.

█   The evidence is sufficient to sustain the conviction on each count.   ''Before an appellate court may set aside a judgment of conviction it must appear that upon no hypothesis whatsoever is there sufficient substantial evidence to support it.''   (*People* v. *Klinkenberg,* 90 Cal.App.2d 608, 626 [204

P.2d 47, 58]; *People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778].)

Judgment and order affirmed. Purported appeal from sentence dismissed.

Moore, P. J., and McComb, J., concurred.

A petition for a rehearing was denied February 21, 1950, and appellant's petition for a hearing by the Supreme Court was denied March 9, 1950. Carter, J., and Schauer, J., voted for a hearing. Edmonds, J., did not participate therein.