[Crim. No. 4749. Second Dist., Div. Two. May 9, 1952.]

THE PEOPLE, Respondent, v. CARL H. PEARSON, Appellant.

14

Murray M. Chotiner for Appellant.

Edmund G. Brown, Attorney General, Frank Richards, Deputy Attorney General, S. Ernest Roll, District Attorney, and Ralph F. Bagley, Deputy District Attorney, for Respondent.

MOORE, P. J.—Having been convicted of violating section 6200 of the Government Code[1] appellant made his motion for a new trial. This having been denied (as well as his motion in arrest of judgment) the proceedings were suspended and he was placed on probation for three years. His appeal is from the order denying the motion. He grounds his demand for reversal on the insufficiency of the evidence, technical errors in rulings at the trial and the unconstitutionality of the statute.

Pearson had been in the sheriff's service for 26 years and captain of the vice squad for three years. As such official he had intruded into countless criminal activities, investigated numerous personalities of the underworld, offended the overlords of vice and directed the manifold operations of his division of the sheriff's office with intelligence and success. As captain it was his function to make investigations of such suspected persons or organizations as were designated by the sheriff or undersheriff and, at times, by other officers, to make reports in writing to the sheriff of his performances. Such labors required him to preserve in orderly fashion all communications to himself and carbon copies of his own letters to his superiors and to the world outside. In

---

[1]Title 1, division 7, chapter 3, section 6200, Government Code, reads:
"Every officer having the custody of any record, map, or book, or of any paper or proceeding of any court, filed or deposited in any public office, or placed in his hands for any purpose, who is guilty of stealing, wilfully destroying, mutilating, defacing, altering or falsifying, removing or secreting the whole or any part of such record, map, book, paper, or proceeding, or who permits any other person to do so, is punishable by imprisonment in the State prison not less than one nor more than 14 years."

his files reposed also certain memoranda in his own writing destined to be a conspicuous exhibit at the trial. Such files were kept by appellant during his incumbency in due course. They contained much confidential information that ordinarily was never seen by eyes not in the county service.

When Pearson was relieved of his command of the vice squad and transferred to the communications division on August 7, 1950, he had accumulated quite a volume of such reports, correspondence and other writings which during his three years there had been locked in steel cabinets. At the time of preparing to depart for his new assignment, the combination on the safe was changed. He then called upon his successor, Captain Frank O. Smith, to witness that he had a file of papers that belonged to him personally that did not concern anyone else. He requested leave to store them in the safe in Smith's office. At the same time Lawrence Schaffer, a deputy sheriff, sergeant of the vice squad and long-time associate of Pearson, heard the conversation and remembered the repository of the papers which filled the only folders left by the departing captain. The change of the combination on the safe made as per custom, left no one with knowledge of the new figures except Captain Smith and Sergeant Schaffer. The contents remained undisturbed until December 10, 1950. Prior to that date Captain Smith had not given anyone permission to remove the treasured documents.

On the afternoon of that December day, Pearson attempted to reach Captain Smith by telephone to gain release of the papers. Being unsuccessful he contacted Schaffer who agreed to take them from the safe and bring them to Pearson at 8th and Olive streets.[2] He wrapped them in a newspaper and set forth on his fateful mission. At the designated rendezvous they were near the office of Attorney Rummel who at that time was attorney for Saul Davis and others suspected of gambling violations and represented underworld characters connected with the activities which Pearson as head of the vice squad had investigated and against whom he and his minions had produced evidence of crimes. Pearson requested Schaffer to accompany him to Rummel's office. When the captain met the attorney in the latter's sanctum, the sergeant retired to a chair on the opposite side, waited

---

[2]Schaffer was at first included in the indictment as a codefendant. It was dismissed as to him on motion.

and witnessed. Pearson removed several sheets, had Rummel scan them, and Schaffer heard the attorney's commendation of Pearson's work in investigating 1747½ East Florence Avenue, address of the Guarantee Finance Company whose chief operators had been indicted in November, 1949. (See *People* v. *Kobey*, 105 Cal.App.2d 548 [234 P.2d 251].) Pearson extracted several sheets from the file, put them in his pocket and kept them. Pearson told Rummel he had prepared and accumulated the contents of the file ever since he had appeared before the grand jury prior to March, 1950. Rummel said, "You look in good shape. Everything is o. k." From such conversation, it is a fair inference that Pearson was seeking the opinion of the attorney to the effect that Pearson had diligently pursued the gamblers and bookmakers operating in unincorporated areas of Los Angeles County.[3] Schaffer returned the files to their place in Captain Smith's office at 8:05 on the following morning. Immediately thereafter he telephoned Pearson at his office and inquired to whom he should report the fact of his having been in Rummel's office. Pearson promised to make the report and requested the sergeant to leave it in his hands.

### THE EVIDENCE IS SUFFICIENT

The crime charged to Captain Pearson is not that he aided a guilty party to escape, or disclosed evidence he had against those mentioned in his reports or otherwise gave comfort to vice elements under investigation. He was convicted of having, while a deputy sheriff, in violation of section 6200, *supra*, removed certain papers on file in the office of the sheriff of Los Angeles County, a public office. The question of his intent is not involved. The mere doing of an act forbidden by the statute is the sum total of the judgment against him.

The papers were not the property of the individual, Carl H. Pearson. Some had been prepared by him for the grand jury to show the work that had been done by the vice squad in running down criminal elements. Some were letters from the sheriff upon reported crimes; some were Pearson's replies to his superior; some were communications from citizens giving evidence of criminal activities; others were in Pearson's own writing he had used while testifying before the grand jury in the spring of 1950. He testified that many

---

[3] Pearson's official conduct had been criticized by the California Crime Commission.

of the papers he had shown to Rummel were official records notwithstanding his statement to Captain Smith that they were his own private papers. No one had inspected or seen the papers after August 7, 1950, until Schaffer took them to Pearson and to Rummel's office. Knowing what "records" Pearson wished to have out of his former quarters it was not difficult for Schaffer to go directly to the safe and remove them. He wrapped them in a newspaper for delivery. Pearson admitted having removed from the package the recapitulation of vice detail activities and the sheet showing the locations suspected of having been used by the Guarantee Finance. He told the grand jury that he took to defense counsel *a great many official records* along with his "pencil notes in this package." Another sheet taken to Rummel was a record of arrests theretofore made in the Hollywood Strip area in 1948 and 1949.

Such proof leaves no room for doubt that Pearson violated the statute. Conceding Schaffer to have been an accomplice which he without doubt had been, he was generously corroborated by appellant's own testimony. ▮ Pearson was an officer within the contemplation of section 6200. (Gov. Code, §§ 24000, 24100; *People* v. *Purcell*, 22 Cal.App.2d 126, 133 [70 P.2d 706]; *People* v. *Otto*, 77 Cal. 45, 47 [18 P. 869].) He testified that he caused another to take from a public office papers of a confidential character, of value to law-enforcing agencies; that he secreted some of them and others he exhibited to an agent of the enemies of the state. ▮ Therefore, since upon honest inferences and indisputable facts the guilt of appellant is established, the reviewing court is powerless to interfere with the judgment. (*People* v. *Newland*, 15 Cal.2d 678, 681 [104 P.2d 778]; *People* v. *Tompkins*, 109 Cal.App.2d 215, 220 [240 P.2d 356]; *People* v. *Schoeller*, 96 Cal.App.2d 55, 60 [214 P.2d 572].)

His guilt is neither erased nor minimized because his own hand did not lift the records and remove them from the sheriff's office. ▮ Since he was interested in the removal, (*People* v. *Delgado*, 28 Cal.App.2d 665, 669 [83 P.2d 512]) and as a superior officer ordered the removal by the sergeant, his long-time associate, he was properly convicted as a principal. (*People* v. *Coffey*, 161 Cal. 433, 439 [119 P. 901, 39 L.R.A. N.S. 704].) ▮ Although absent from the office, by advising, encouraging and abetting the sergeant to accomplish the removal, Pearson became a principal. (*People* v. *Young*, 132 Cal.App. 770, 771 [23 P.2d 524].) All persons

concerned in the commission of a felony are principals. (Pen. Code, § 971.) Pearson called upon Schaffer to remove the papers because the latter was the only available person who had access to the safe. But without regard to his being the only person present who knew the combination he followed the orders of his former captain, became his partner in crime by voluntarily uniting with Pearson in violating the statute. (*People* v. *Lima,* 25 Cal.2d 573, 578 [154 P.2d 698].) His entire narrative of the events is corroborated by appellant's testimony.

The contention that the papers removed were not public records is a mere quibble. They were kept by the sheriff's office as evidence of what had been done, of what was to be done and proof of activities of those elements against whom the law-enforcing agencies should be on the alert. They were convenient to an expeditious discharge of the duties of the sheriff's office and they were necessary to the enlightenment of the sheriff as to past failures and achievements and to current endeavors. They were not open to public inspection. The sheriff's office would be handicapped in enforcing the laws if at every sunset vicious elements might read all the sheriff's reports of vice activities during the preceding day and all plans for defeating crime in the ensuing night. Such documents are confidential public records and because of public policy are entitled to the protection of the statute. (*Runyon* v. *Board of Prison Terms & Paroles,* 26 Cal.App.2d 183, 184 [79 P.2d 101]; *City & County of San Francisco* v. *Superior Court,* 38 Cal.2d 156, 161, 162 [238 P.2d 581].) A paper written by a public official in the performance of his duties or in recording the efforts of himself and those under his command or written plans of future work is a public record and is properly in the keeping of the office. (*Cox* v. *Tyrone Power Enterprises,* 49 Cal.App.2d 383, 396 [121 P.2d 829]; *People* v. *Tomalty,* 14 Cal.App. 224, 232 [111 P. 513].)

Inasmuch as intent is not made an affirmative element of the crime denounced, the law imputed criminal intent in the very enactment of the statute, rendering it unnecessary to allege or prove the intent. (*People* v. *Gonzales,* 72 Cal.App. 626, 630 [237 P. 812].) But it was not necessary for the jury to rely upon the presumption inherent in the statute itself. A criminal intent to remove the papers was reasonably inferable from the evidence. Despite his brilliant career in the public service, appellant was suspect

in December, 1950. Whether there was substantial basis for the suspicion is not germane to the instant issue. In any event while the public mind was disturbed if not inflamed at the reputed, flagrant criminal activities of the bookie and gambling elements, Pearson, in the dead of night causes a volume of confidential papers to be removed from a locked, steel repository to which he did not himself have access. Pursuant to appointment he appears in the office of Attorney Rummel who has represented some of those accused as participants in organized vice. He opens the files in the secrecy of the attorney's office and acquaints the latter with the historic efforts of the vice squad.

For such conduct no rational excuse has been suggested. With a friendly colaborer as head of the department no good reason is conceivable why appellant did not have Rummel meet him in the sheriff's office and request Captain Smith to exhibit the documents. Or, better still, why not go directly to the district attorney and inquire whether the papers in the steel safe would show him to a disadvantage before the grand jury which he at that time feared was about to commence an inquisition to call upon him to explain? ▮ The evidence justified the verdict.

### No Prejudice In Rulings

Appellant assigns as prejudicial a question propounded to himself by the deputy district attorney with reference to the papers removed and to the fact that they were not accessible to the public. "Q. And then obviously they wouldn't be accessible or available to a hoodlum lawyer like Sam Rummel was?"

Such a question should not have been asked. It evidenced a perfervid zeal to impress the jury that appellant had forsworn his duty to maintain honorable associates, or had shown the records of his office to an ally of the underworld. ▮ But prejudice does not necessarily result from every mistake of enthusiastic counsel. (*People* v. *Johnson,* 105 Cal.App.2d 478, 488 [234 P.2d 116].) ▮ Jurors are selected on their qualifications and are presumed to have reason. The prosecutor promptly apologized, explained that he meant lawyer for hoodlums and the court expressed disapproval, ordered counsel to leave Rummel out of the trial and stated that "we are trying this defendant on a specific charge . . . limited by the language of the indictment." The prosecutor's true purpose was promptly disclosed by inquiring whether

Rummel, a defense lawyer, not connected with any law-enforcement agency was entitled to see vice-squad records. In other words, the State was entitled to show that in removing the documents and by exhibiting them to Rummel appellant's act was done with a full knowledge of its significance. Surely, removing the papers to exhibit them to the district attorney would never have been questioned. But Rummel was not the district attorney. Rummel was well known to Pearson as a defense lawyer. On one occasion in the past appellant had returned to Rummel, after his client had pleaded guilty, a large amount of cash and checks, a roulette table and other gambling devices taken in a raid. ▌ The jury having been instructed to disregard any sinister intimation arising from questions and to disregard matter stricken they are presumed to have complied. (*People* v. *Young*, 25 Cal.App.2d 148, 156 [77 P.2d 271].)

After the court had sustained an objection to the prosecutor's question whether appellant had handled the return of the gambling paraphernalia to Rummel the deputy inquired of Schaffer on direct whether Rummel had signed the receipt for the property. ▌ The purpose of the question was obviously to show that the paper was an official document and not the personal belonging of appellant. The objection was properly overruled. The same inquiries were substantially made by appellant's counsel. There is an utter lack of a showing of bad faith on the part of the deputy. (See *People* v. *Raleigh*, 83 Cal.App.2d 435, 443 [189 P.2d 70] ; *People* v. *Horowitz*, 70 Cal.App.2d 675, 693-694 [161 P.2d 833].)

▌ Assignment is made of the prosecutor's question whether the "Guarantee Finance" refers to "the bookmaking syndicate operating on East Florence." The inquiry was not improper. Not only was it made after Pearson had testified that his office had done much work on the Guarantee Finance, but appellant was questioned by his own counsel in detail about that institution. The investigation of that concern by the grand jury was the chief cause of appellant's visit to Rummel who pretended to know that the immediate inquisition would involve Guarantee Finance.

▌ Complaint is made of the question to Schaffer by the prosecutor, to wit, whether Chotiner, Pearson's counsel, appeared for the sergeant when the attorney called upon the district attorney to ask for a dismissal as to Schaffer. The question came in logically while the prosecution was attempt-

ing to cross-examine Schaffer with respect to the conversation between Pearson and Rummel. No prejudice resulted. The trial judge reminded the parties that the motion to dismiss the action as to Schaffer was presented to the superior court and "that is all there is to it."

In the course of his cross-examination appellant was asked, "Did you tell that body [the grand jury] that you requested Mr. Schaffer when he took the documents back to the vice squad to see that they were filed in their proper place?" Appellant asserts that such question was misconduct, that it implied that appellant "concocted a new story since testifying before the grand jury." No prejudice could have resulted from the question. It was propounded in the course of an attempt to impeach appellant who had testified that he told Schaffer the designated papers would be returned to the files. The court's instructions to disregard statements as well as implications in questions by the attorneys served as a panacea for the ills suffered from improper though nonprejudicial questions. (*People* v. *Young, supra.*) Also, it is assumed that the trial court considered such contention at the time of denying the motion for a new trial.

It has a broad discretion in determining whether questions or other conduct of counsel caused prejudice. (*People* v. *Mayes,* 113 Cal. 618, 622 [45 P. 860].) Contrary to appellant's contention, the prosecutor did not try to prejudice the defense by asking whether he had told certain facts to the grand jury. The repeated inquiry about appellant's activities with respect to Guarantee Finance and Saul Davis was prompted by the fact that appellant fell into his tragical error by virtue of the zealous interest in such matters on the part of Rummel or appellant.

REFUSAL OF PROPOSED INSTRUCTIONS NOT PREJUDICIAL

Appellant assigns as prejudicially erroneous the court's rejection of 18 proposed instructions.[4] Most of them were

---

[4]DEFENDANT'S PROPOSED INSTRUCTIONS REJECTED

No. 1. "The Court deeming the evidence in this case insufficient to warrant a conviction of the defendant, advises the jury to acquit him.° This advice the jury is not bound to accept."

No. 3. "An act committed or an omission made under an ignorance or mistake of fact which disproves any criminal intent is not a crime."

No. 4. "An essential element of the crime of which the defendant is accused in the indictment is intent, the law requiring that to constitute such a crime there must exist a union or joint operation of criminal conduct and criminal intent. The law requires that to be guilty of crime one must intend the conduct that fits the description

included in the court's instructions. No. 1 would have been error. Not only do the verdict and the order denying the motion for a new trial prove its freedom from prejudicial

of the crime and must engage in that conduct knowingly and wilfully."

No. 6. "A public record is one required by law to be kept or necessary to be kept in the discharge of a duty imposed by law or directed by law to serve as a memorial and evidence of something written, said, or done, or a written memorial made by a public officer authorized to perform that function, or a writing filed in a public office.

"The elements essential to constitute a public record are, namely: that it be a written memorial, that it be made by a public officer, and that the officer be authorized by law to make it."

No. 7. "The mere fact that a document is deposited or filed in a public office or with a public officer, even though necessarily so deposited or is in custody of a public officer, does not make it a public record.

"Papers or memoranda in the possession of public officers which are not required by law to be kept by them as official records are not public records; memoranda of public officers made for their own convenience, even if made at the public expense, are not public records unless made so by statute.

"A record is intended not only to give an instrument perpetuity but also publicity; public records and documents are such as are placed on the public files for the use or information of the public."

No. 8. "Every citizen has a right to inspect and take a copy of any public writing of this State except as otherwise expressly provided by statute."

No. 9. "A public record is a record made by a public officer in pursuance of duty, the immediate purpose of which is to disseminate information to the public or to serve as a memorial of official transactions for public reference."

No. 10. "The mere fact that a document is in a public office or in custody of a public officer does not make it a public record."

No. 11. "The mere fact, if it be a fact, that a document or documents were taken from the office of the Sheriff of the County of Los Angeles is not a violation of Section 6200 of the Government Code if the said document or documents remained in the custody of a deputy sheriff of the County of Los Angeles who was entitled to have custody of said document or documents."

No. 12. "The word 'remove' as used in Section 6200 of the Government Code means more than just the mere physical moving from a place or position or moving from a room.

"The word 'remove' as used in Section 6200 of the Government Code implies and is used in connection with the meaning of the word 'secrete'."

No. 14. "Circumstantial evidence is the evidence of the existence of facts from which is sought to be inferred the existence of other material facts bearing upon the question at issue, or the fact to be proved.

"When a conviction is sought upon circumstantial evidence, then each essential independent fact necessary to complete the chain or series of independent facts by which the prosecution seeks to establish the guilt of the defendant must be established to the same de-

error but a review of the evidence discloses a healthful record. No. 3 would have been error. There was no evidence of a mistake of fact on the part of defendant. No. 4 was substantially given by the court. Nos. 6 and 7 would have been out of place. (See *People* v.· *Shaw*,

gree of certainty as the main fact which these independent circumstances taken together may tend to establish; that is, each essential independent fact in a chain or series of facts relied upon to establish the main fact must be established to a moral certainty and beyond a reasonable doubt and to the entire satisfaction of each member of the jury. The circumstances must all concur and must be such as are absolutely opposed upon any reasonable hypothesis to the innocence of the accused, and incapable of explanation upon any reasonable theory other than that of the guilt of the accused. If all the essential independent facts are not proven beyond a reasonable doubt, the defendant is entitled to an acquittal."

No. 15. "When the case which has been made out by the People against a defendant rests entirely or chiefly on circumstantial evidence, and in any case before the jury may find a defendant guilty basing its finding solely on such evidence, each fact which is essential to complete a chain of circumstances that will establish the defendant's guilt must be proved beyond a reasonable doubt."

No. 16. ''I instruct you further that you are not permitted, on circumstantial evidence alone, to find the defendant guilty of the crime charged against him unless the proved circumstances not only are consistent with the hypothesis that the defendant is guilty of the crime, but are irreconcilable with any other rational conclusion."

No. 17. "Where circumstantial evidence is relied upon, each circumstance necessary to complete the chain which must be established to create a presumption of guilt, must be established to a moral certainty and beyond a reasonable doubt. The circumstances must all concur to show that defendant committed the crime, and they must not only be consistent with each other, but must be consistent as well with the hypothesis that the defendant is guilty, and at the same time inconsistent with any other rational conclusion, and must exclude to a moral certainty and to the entire satisfaction of the jury any other hypothesis but the single one of guilt."

No. 18. "In order to convict the defendant upon the evidence of circumstances, it is necessary not only that all the circumstances concur to show beyond a reasonable doubt that a crime was committed as alleged in the indictment, but that the defendant was the one who committed such crime and that they are inconsistent with any other rational conclusion. It is not sufficient that the circumstances prove, coincide with, account for, and therefore render probable the theory sought to be established by the prosecution, but they must exclude to a moral certainty every other theory but the single one of guilt, or the jury must find the defendant not guilty."

No. 19. "In order to sustain a conviction on circumstantial evidence, all the circumstances proved must not only be consistent with the hypothesis that the accused is guilty, and at the same time inconsistent with the hypothesis that he is innocent, and with every other rational hypothesis except that of guilt.

"If the circumstantial evidence relied upon in a case is such that it may reasonably lead to two opposite conclusions, one pointing to the guilt of the defendant and the other to his innocence, then it

17 Cal.2d 778 [112 P.2d 241]; *People* v. *Tomalty*, 14 Cal. App. 224 [111 P. 513].) They do not border on the law as it relates to section 6200 which was read to the jury. That section includes *book, paper,* and *proceeding,* as well as *record* and *map,* and *any paper, placed in his hands for any purpose.* Nos. 8 and 9 would have been erroneous. No. 8 is immaterial; No. 9 would have deflected the jury's attention from the issue of an officer's removing and secreting papers deposited in a public office. No. 10 was meaningless. "Public records" are not necessarily involved. In fact, appellant testified that the papers of the vice squad were not open to public inspection. Public policy requires that documents in the sheriff's office relating to law enforcement be treated as confidential. (*Runyon* v. *Board of Prison Terms & Paroles,* 26 Cal.App.2d 183, 184 [79 P.2d 101].) ■ The contents of such documents are not to be divulged by their custodian when their secrecy would serve the public interest. (Code Civ. Proc., § 1881, subd. 5; *People* v. *King,* 122 Cal.App. 50, 56-57 [10 P.2d 89].) ■ No. 11 is directly contrary to the inhibition contained in section 6200 and Pearson testified that he caused Schaffer to remove the papers from the vice squad office and that he, himself, in the nighttime, without the consent of a superior officer possessed them in the office of Rummel and removed from the county file certain selected papers which did not appear until the trial. No. 12 could have added nothing to the general charge. ■ Refusal to

---

is not sufficient to convict upon, for in such an event, the jury must adopt the hypothesis of innocence, and find the defendant not guilty."

No. 40. "If the evidence in this case is susceptible of two constructions or interpretations, each of which appears to you to be reasonable, and one of which points to the guilt of the defendant, and the other to his innocence, it is your duty, under the law, to adopt that interpretation which will admit of the defendant's innocence, and reject that which points to his guilt.

"You will notice that this rule applies only when both of the two possible opposing conclusions appear to you to be reasonable. If, on the other hand, one of the possible conclusions should appear to you to be reasonable and the other to be unreasonable, it would be your duty to adhere to the reasonable deduction and to reject the unreasonable, bearing in mind, however, that even if the reasonable deduction points to defendant's guilt, the entire proof must carry the convincing force required by law to support a verdict of guilt."

No. 42. "One who does not actively commit an offense, but who aids, promotes, or encourages its commission, either by act or counsel or both, is not deemed by law to be guilty and shall not be found guilty of the crime unless he did what he did knowingly and with criminal intent. To abet another in the commission of a crime implies a consciousness of guilt in instigating, encouraging, promoting, or aiding the commission of such criminal offense."

instruct on a mere commonplace is not prejudicial. (*People* v. *Cravens,* 79 Cal.App.2d 658, 669 [180 P.2d 453].)

Proposed instructions numbered 15, 16, 17, 18, 19 and 40 appertain to circumstantial evidence and were therefore not required since the prosecution relied upon direct evidence. (*People* v. *Nunn,* 65 Cal.App.2d 188, 194 [150 P.2d 476].)

Where the evidence is not entirely or even substantially circumstantial it is not error to reject proposed instructions adapted to purely circumstantial evidence. (*People* v. *Hill,* 76 Cal.App.2d 330, 341 [173 P.2d 26].) Proposed instruction 40 was covered by the court's instruction, as were likewise proposed instructions 23, 24 and 27. The court read the conventional and well seasoned instructions with reference to accomplices founded upon long established principles as reshaped and crystallized in "Caljic." (California Jury Instructions, Criminal.) Having so stated the law as applicable to all the issues, the trial court was not obliged to repeat any of them. (*People* v. *Bickerstaff,* 46 Cal.App. 764, 775 [190 P. 656], approved in *People* v. *Hill, supra.*)

As to offered instruction No. 42, the knowledge and intent essential to the commission of a crime were covered by the court's instructions on *intent, wilfully, fraudulent purpose not required,* and by section 20 of the Penal Code.

Taken as a whole, the instructions given fairly and fully covered every issue. They defined section 6200 of the Government Code, *officer, intent required, secrete, accomplice* and the factors essential to corroboration; presumption of innocence, reasonable doubt, credibility of witnesses. With such a complete performance, the jury could not have been misled. In no material respect did appellant suffer prejudice. (*People* v. *Rhoades,* 93 Cal.App.2d 448, 451 [209 P.2d 33].)

RULINGS ON APPELLANT'S OBJECTIONS NOT PREJUDICIAL

Twenty-one rulings on objections to evidence are assigned as prejudicial errors.

(A) The first was to the introduction of any evidence on the ground that the court did not have jurisdiction. The bases of such objection are that the transcript of the grand jury proceedings show that (1) no offense was committed by Pearson; (2) the indictment was not found as prescribed by the Penal Code in that the evidence unexplained or uncontradicted would not warrant a conviction; (3) no prima facie showing of a corpus delicti without the testimony of Schaffer, an accomplice, was made; the documents removed are

not public records, and there was no removal of them; (4) the indictment was not presented as prescribed by law in that a transcript of the entire testimony taken by the grand jury cannot be furnished defendant as provided by section 925 of the Penal Code, it having been taken off the record; (5) the indictment does not conform with section 950 of the Penal Code in that it does not contain a concise statement of the acts constituting the alleged offense, and it cannot be ascertained whether the documents removed or secreted constituted public records; (6) section 6200 is unconstitutional. Most of the foregoing reasons for the objection have already been answered. This court denied appellant's petition for a writ of prohibition (March 19, 1951, cause numbered 18442) prior to the trial.

Appellant's testimony before the grand jury was itself sufficient to support the indictment. (See *People* v. *Hopkins*, 101 Cal.App.2d 704, 708 [226 P.2d 74].) He had met Guasti (see *People* v. *Guasti*, Crim. No. 4736, 110 Cal.App.2d 456 [243 P.2d 59]) and Rummel on Sunday afternoon, December 10, 1950; had met Rummel on three prior occasions when his gambling clients were under arrest. He told the grand jury that he did not desire at that time to explain how he happened to return to Rummel's client, Saul Davis, a gambling equipment "and approximately $8000 in cash to him"; that Rummel told him he had some information for Pearson and asked the latter if he had any records that had anything to do with the Guarantee Finance and told Pearson to bring them; that he was a law-enforcement officer and Rummel was a defense attorney; that he called Schaffer about the package of reports and "my pencil notes in the safe" and "I asked Schaffer to bring them with him which he did." He identified the package Schaffer had brought to Rummel's office. "At least out of the first folder there are some matters that might be considered the official records of the Sheriff's office," he told the grand jury, and he "did take certain records out of that package and keep them . . . my own pencil notes." Such testimony alone was sufficient to warrant an indictment. Whether it was a sufficient basis for the indictment is of no concern at this stage of the action. (*Lorenson* v. *Superior Court*, 35 Cal.2d 49, 55 [216 P.2d 859]; *People* v. *Wells*, 33 Cal.2d 330, 337 [202 P.2d 53].)

(B) Appellant's general objection to the question to Schaffer as to what was the conversation the latter heard

between Rummel and Pearson before the package had been opened was properly overruled. The answer was responsive and of evidential value. The conversation was res gestae. It disclosed Pearson's knowledge of the purpose and nature of Rummel's inspection.

(C) The motion to strike Schaffer's answer was of course properly denied.

(D) Appellant contends that he was prejudiced by the order overruling his general objection to the question addressed to Schaffer, to wit, ''What was said after the package was opened and the folders were exposed between Pearson and Rummel concerning the various documents and what took place?'' That the ruling was correct is established by the testimony about the conversation of the two men.

(E) To the inquiry of Schaffer whether the oft-mentioned Guarantee Finance referred to the bookmaking syndicate on East Florence Avenue, the objection that it called for a conclusion was properly overruled. The answer made clearly positive what was already apparently true, by a witness who knew the fact. The ruling was distinctly within the scope of the trial judge's discretion.

(F) The general objection was lodged against the question to Schaffer: ''What was the conversation you had with Mr. Pearson at that time?'' Its relevancy was proved by the answer which recounted the witness' telephonic conversation with appellant on the morning of December 11. That was when Pearson advised Schaffer to leave with him the matter of reporting the visit to Rummel's office. The conversation of Pearson and his conduct after he exhibited the papers to Rummel were relevant. (*People* v. *Moore,* 70 Cal.App.2d 158, 163 [160 P.2d 857].)

(G) Admitting in evidence, over objection, the papers and documents taken by Schaffer to Pearson at Rummel's office, was essential to a full representation of the State's case. They were not hearsay. Ample foundation was laid by Schaffer's testimony.

(H) The inquiry of Schaffer concerning a receipt for the Saul Davis gambling equipment was proper. Such a receipt should have been among the files carried away by Schaffer to Pearson. Whether such documents had been removed or secreted was the paramount issue.

(I) The inquiry of Schaffer as to whether he obtained permission from any persons to remove the papers and records to Rummel's office was proper. The good faith

of appellant and his emissary was a factor calculated to shed light upon the extent or degree of their guilt.

(J, K, L) For the same reason the objections were properly overruled to (1) the question to Schaffer whether Chotiner represented him in seeking a dismissal as to Schaffer; (2) to the inquiries of Captain Smith as to whether he granted Schaffer permission to take the vice-squad records out and to take them to Rummel's office. No sound reasons for sustaining such objections have been suggested.

(M) The reading of appellant's testimony before the grand jury was not error. The corpus delicti had been established. The identity of the offender is not a part of the corpus delicti. (*People* v. *Mainhurst,* 67 Cal.App.2d 882, 884 [155 P.2d 843].) The corroboration of Schaffer was not essential to the establishment of the corpus delicti. (*Stern* v. *Superior Court,* 78 Cal.App.2d 9, 17 [177 P.2d 308] ; *People* v. *Hudson,* 139 Cal.App. 543, 544 [34 P.2d 741] ; 4 Cal.Jur. 10-Yr. Supp., p. 747, § 303.) Appellant's confessions alone corroborated Schaffer. (*People* v. *Fountain,* 91 Cal.App.2d 158, 162 [204 P.2d 639].) In addition were the inferences from the detailed circumstances of the removal of the papers. (*People* v. *Thompson,* 69 Cal. App.2d 80, 86 [158 P.2d 213].)

(N, O, P, Q, R) Since no authority was cited in support of these assignments, they are deemed to have been abandoned. (*People* v. *Thompson, supra,* p. 85.) All relate to matters within the scope of the trial judge's discretion and concerned appellant's testimony before the grand jury.

Captain Smith testified that he permitted the papers to remain in the safe; he never removed them; Deputy Smeltz testified that he was on duty alone when Schaffer, empty handed, called about 8:30 p.m. on December 10, 1950, entered the room that contained the safe, and emerged with the package wrapped with newspaper. After he asked Schaffer his purpose, the latter left. Such facts taken with Schaffer's testimony established the corpus delicti for the admission of appellant's statements before the grand jury. (*People* v. *Bradford,* 95 Cal.App.2d 372, 379 [213 P.2d 37].)

The general objection was interposed to each of a number of other questions. No specific vice of any of such questions was suggested. The contents of the answers disclose their propriety and advantage. They contributed to the fuller understanding of appellant's ill-conceived purpose, revealed his reactions after the crime was known to his su-

periors, along with indications of his consciousness of guilt. (*People* v. *Goldstein*, 84 Cal.App.2d 581, 588 [191 P.2d 102] ; *People* v. *Zerillo*, 36 Cal.2d 222, 228-229 [223 P.2d 223].)

### PROSECUTION'S OBJECTIONS WERE PROPERLY SUSTAINED

■ (1) The question to Schaffer on cross-examination, to wit, whether the public had access to the papers and documents removed by Schaffer and Pearson, was not relevant, nor was it proper cross-examination. They contained confidential information. To expose them to the bookie shop-keepers and gamblers would have given such elements three leaps ahead of the vice probers and law enforcers. They were not open to the public. (*Runyon* v. *Board of Prison Terms & Paroles*, 26 Cal.App.2d 183, 184 [79 P.2d 101].)

■ (2) Whether Captain Smith would have permitted Pearson to take his "personal notes and papers" from the office called for a conclusion and the question was properly not allowed. The answer could have been no more than a conjecture.

(3) The question to the witness Kapic, a deputy under Captain Pearson, as to what his reason was for not returning any papers "back into the files of the Vice Squad" was properly excluded. The function of any witness to occurrences is to tell what was done. To inquire into what went on in his mind is not material to any issue. His answer could have been no more than a conclusion or a speculation.

■ (4) Pearson was asked by his counsel to tell "the status in connection with that application for reinstatement in connection with the outcome of this case." The objection thereto was properly sustained. Pearson had already testified that he was discharged on December 12, 1950, and that his application for reinstatement was pending.

### DENIAL OF MOTION TO ANNUL THE INDICTMENT

Section 995 of the Penal Code requires the superior court to set aside an indictment (1) "where it is not found and presented as prescribed in this code"; (2) where "the defendant has been indicted without reasonable or probable cause." Appellant assigns as prejudicial the court's denial of his motion to dismiss. His arguments have already been answered in our discussion of his first objection to the admissibility of any evidence. ■ Moreover, the indictment charges in the language of the statute and in such words as gave notice of the offense. Such indictment is sufficient. (*People* v. *Williams*, 27 Cal.2d 220, 226 [163 P.2d 692] ; *Peo-*

*ple* v. *Saffell,* 74 Cal.App.2d Supp. 967, 974 [168 P.2d 497].) Greater liberality is now indulged in adjudging the sufficiency of an indictment. (*People* v. *Humphrey,* 27 Cal.App. 2d 631, 638 [81 P.2d 588].) ▇ But on this point appellant occupies an unfortunate position in that an attack upon an indictment cannot be considered on appeal from an order denying a motion for new trial. (*People* v. *Raines,* 66 Cal.App.2d 960, 963 [153 P.2d 424]; *People* v. *Duncan,* 50 Cal.App.2d 184, 186 [122 P.2d 587].) The discussion under this heading and under that referred to disposes of the assignment that appellant was prejudiced by the overruling of his demurrer and the denial of his motion in arrest of judgment.

SECTION 6200 IS A VALID STATUTE

▇ Appellant contends that the section is void "unless the words record, map or book" are construed to mean public record, public map, or public book to conform to the title of chapter 3, division 7, title 1 of the Government Code. He bases such thesis upon section 24, article IV of the Constitution, requiring a statute to embrace but one subject expressed in the title, citing *Shields* v. *Oxnard Harbor District,* 46 Cal. App.2d 477 [116 P.2d 121]; *Jackson* v. *City of Santa Monica,* 13 Cal.App.2d 376 [57 P.2d 226]; *People* v. *Murguia,* 6 Cal.2d 190 [57 P.2d 115]; *Pierce* v. *Riley,* 21 Cal.App.2d 513 [70 P.2d 206].

Chapter 3 relates to crimes against public records, documents, certificates. The record made by the captain of the vice squad for the regulation and control of the operations of that law-enforcing group of public officers is a public record. A reasonable construction of section 6200 would require such conclusion. ▇ The *filing* of a document imports that it is thereby placed in the custody of a public official to be preserved by him for public use. ▇ Because for a season its value is best conserved by maintaining its confidential character by excluding public gaze, it becomes no less a public record. (*People* v. *Tomalty,* 14 Cal.App. 224, 232 [111 P. 513]; *Cox* v. *Tyrone Power Enterprises, Inc.,* 49 Cal.App.2d 383, 395 [121 P.2d 829].) In the Shaw case (*People* v. *Shaw,* 17 Cal.2d 778, 811 [112 P.2d 241]) it was effectually held that application blanks and rough sheets were parts of permanent records of the Civil Service Department within the meaning of section 113 of the Penal Code which became section 6200, Government Code. ▇ A reporter's transcript is such a public document as cannot be

altered. (*Whitlow* v. *Superior Court,* 87 Cal.App.2d 175, 182 [196 P.2d 590].) The register of probate proceedings is a public document. (*People* v. *McAtee,* 35 Cal.App.2d 329, 332 [95 P.2d 471].) A public record embraces any document or record which may properly be kept by an officer in connection with the discharge of official duties. (*People* v. *Purcell,* 22 Cal.App.2d 126, 131 [70 P.2d 706].) But the statute is violated if the paper or document removed had been *placed in the hands of a public official for any purpose.* (Ibid.) Inasmuch as the constitutionality of a statute is not a ground for a new trial (Pen. Code, § 1181) it would be supererogation to discuss this point. (See *People* v. *McEntyre,* 32 Cal.App.2d Supp. 752, 761 [84 P.2d 560].)

The order is affirmed.

McComb, J., and Fox, J., concurred.

A petition for a rehearing was denied May 20, 1952.