[Crim. No. 1547. Second Appellate District, Division One.—October 5, 1927.]

THE PEOPLE, Respondent, v. JAMES McKELVEY, Appellant.

Rush & Beirne, Jud D. Rush and William B. Beirne for Appellant.

U. S. Webb, Attorney-General, and James S. Howie, Deputy Attorney-General, for Respondent.

McLUCAS, J., *pro tem.*—The defendant was convicted of the crime of violation of section 288 of the Penal Code

and appeals from the judgment and from the order denying his motion for a new trial.

Appellant did not introduce any evidence as to defendant's general reputation in the community for the traits involved in the charge against him; but the prosecution in rebuttal was permitted to introduce the testimony of five witnesses that defendant's reputation for morality and virtue was bad. Defendant objected to each question propounded to each of these five witnesses, but the objections were all overruled. Appellant then assigned the asking of each question as misconduct on the part of the district attorney and requested the court to instruct the jury to disregard both the questions and the answers, which was denied by the court. Appellant then moved that all of the testimony of these five witnesses be stricken, which motion was also denied. When the court convened for the afternoon session, the court informed the jury that it had admitted the character evidence offered by the prosecution while under a misapprehension as to the state of the record, and then struck from the record all of the testimony given by said five witnesses, sustained appellant's objection to all of the questions asked said witnesses, and instructed the jury to disregard all questions as to defendant's reputation for morality and chastity in the community and all of the answers given by said witnesses to those questions, and to treat their testimony as though they had never heard it. Similar instructions were given at the close of the trial. The jury was instructed that the defendant was presumed in law to be of good moral character and that the evidence in the case was to be considered by the jury in the light of that presumption. ██ It is elementary that such testimony is admissible upon the part of the prosecution only when the defendant has himself opened the door for such evidence by endeavoring to establish his good reputation for the traits involved in the charge against him. ██ In the case at bar no evidence was introduced by the appellant as to his good character, and under the rule as stated it was clearly prejudicial error for the court to admit the testimony of the five witnesses who testified for the state on rebuttal that the appellant's reputation for morality and virtue was bad. Moreover, such error was not cured by the fact that the trial judge after examination of the record

did everything in his power to correct his former ruling by sustaining appellant's objections, granting appellant's motions to strike from the record, and instructing the jury to disregard the testimony as though it had never heard it. It was an intellectual impossibility for the jury to wholly erase such testimony from their memory and to disregard it as though they had never heard it. They had before them the testimony of five apparently credible witnesses that appellant's reputation for the traits involved in the charge was bad. Upon the strength of this testimony, if the case was closely balanced, the jury might have been convinced that there was more likelihood of the defendant's guilt than of his innocence. If any juror had a reasonable doubt as to defendant's guilt after a consideration of the rest of the evidence, then surely this additional evidence offered on behalf of the prosecution upon an issue vital to appellant's case, and overturning as it did the presumption of good moral character, might have turned the scales against the appellant.

It is a general rule that under ordinary circumstances the admission of improper evidence is harmless if subsequently stricken out and the jury instructed to disregard it. It has also been held that in certain cases where the incompetent evidence goes to the main issue and where the proof of defendant's guilt is not clear and convincing, that the error in admitting the incompetent evidence cannot be cured by striking out and instructing the jury to disregard that evidence. From a review of the evidence in the case at bar it cannot be said that the proof of defendant's guilt was clear and convincing. The evidence was in sharp conflict. It would serve no good purpose to relate the details of the evidence submitted; but suffice it to say that the evidence offered by the prosecution consisted of the testimony of the prosecuting witness, a six year old girl, that the defendant committed the acts as charged in the information on April 8, 1927, while passing through a school-crossing tunnel and later at the defendant's home, where the prosecuting witness was taken by the defendant. She testified that she saw no one present in the defendant's home on the day these acts were committed. The testimony of the prosecuting witness was corroborated by the evidence that she complained to her mother that defendant had taken

her to his home and had hurt her. These complaints were not sufficiently definite to cause any investigation to be made by the girl's mother until April 20th, when the mother requested a police-woman to make such investigation. There was also testimony by police officers that certain admissions were made by the defendant. Defendant testified that he did not commit the acts charged against him, and denied any admissions to the police officers. He testified that he met the prosecuting witness near the entrance of the second tunnel, where she fell down crying; that he talked with her and consoled her and then took her home with him to play with his niece; that when he went home his mother, sister, and niece were present in the house, and that the prosecuting witness played with his niece; that when the prosecuting witness left, defendant's sister requested him to button a portion of the clothing of the prosecuting witness which had become unbuttoned, which he did in the presence of the sister and at her request. He was corroborated in this respect by the testimony of his sister. Much of the testimony of the defendant was corroborated by that of his sister and other witnesses. The defendant's mother testified that she was in her house when the defendant brought the prosecuting witness, and that her daughter and defendant's niece were also present. It also appears that defendant was ill on April 8th, the day of the alleged crime, and was returning from his doctor's office at the time he met the prosecuting witness; that on the next day his physician lanced his throat, which was infected. An affidavit was filed by appellant on his motion for a new trial, in which the deponent stated that she saw the defendant help the prosecuting witness to her feet at the entrance to the tunnel and then take her by the hand and guide her to his home; that she immediately went to defendant's home to visit defendant's sister, and there saw the defendant, his sister, and two little girls, the prosecuting witness and the defendant's niece, all in the front room; that she later saw defendant's mother in the dining-room. The witness was pregnant at the time of the trial and could not be called. It thus appears that the testimony of defendant's mother and sister and the affidavit filed on the motion for a new trial directly contradicted the testimony of the prosecuting witness that no

person was present in the defendant's home at the time she was taken there by the defendant.

The case of *People* v. *Anthony*, 185 Cal. 152 [196 Pac. 47], is particularly pertinent to the instant case. While the facts are to be distinguished, yet the governing principle of law is identical in the two cases. In that case the court said, page 158: ''Where, however, a series of questions were asked, as they were here, each suggesting to the court and to the jury that the district attorney was advised that this man was guilty of lewd and lascivious conduct with numbers of his young female charges and that he had had sexual intercourse with several of them, one as young as nine years, it is a psychological impossibility for the jury to wholly eradicate the impression made by such questions from their minds in weighing the evidence as to the guilt or innocence of the defendant on the particular item charged. . . . A district attorney is charged with the public duty of seeing that the defendant has a fair trial. The jury is aware of this fact and must have assumed that he had information which justified the question. The question of the district attorney asked of the defendant amounted to a charge against the defendant that he had been guilty of the offense of rape committed upon two small girls in his custody. The human mind is not so constructed that a thing of that kind can be either forgotten or overlooked by a jury. We are not called upon to consider the good intentions of the district attorney in asking the question. The good faith of the district attorney in asking questions upon debatable ground is always an element to be considered. But the good faith of the district attorney in a case of this kind in asking questions that are clearly improper does not take away from the question the prejudicial effect resulting to the defendant. The real question is, Has the defendant had a fair trial? It is clear under the circumstances of this case where the evidence and the conflicting considerations are so evenly balanced that if the jury attached the slightest weight to the innuendoes of the district attorney, that this weight might be sufficient to turn the scales. Ordinarily, the prompt sustaining of objections to improper questions, coupled with instructions to the jury to disregard the question, will cure an error of this kind. But where the offense has been repeated in various forms and

where the evidence is so closely balanced and the district attorney after being warned by the court continues in his course, we must hold that the misconduct was so prejudicial as to entitle the defendant to a new trial.''

*People* v. *George,* 72 Cal. App. 124 [236 Pac. 934], was another case where the defendant was accused of lewd and lascivious acts with a six year old girl, and the district attorney sought to introduce incompetent evidence. In that case the court said, page 130: ''When we recall the nature of the case; the extreme danger, as shown by experience, of convicting men on the testimony of a child of the tender years of Etta Peterson unless strongly corroborated by competent evidence, and how little is required to turn the scale in the minds of the jurors, naturally inflamed by the revolting character of the offense charged, we cannot but believe that this testimony did have a profound effect upon the jury, and that, as a fair probability, it outweighed in their minds the testimony of the appellant in denial, the evidence of his previous good character, his associations and employment, his domestic situation and the inherent improbability that he, in view of these facts, would commit the crime charged.''

In *People* v. *Edgar,* 34 Cal. App. 459 [167 Pac. 891, 895], the court said, page 471: ''While it is the general rule that if it can fairly be said, from all the circumstances of the case considered in conjunction with the nature and extent of the assigned misconduct, that an admonition of the court had the desired effect, there can be no just cause for complaint, nevertheless it is a recognized exception to that rule that, where, as here, in a closely balanced criminal case, misconduct is repeated and persisted in, despite the warnings and admonitions of the trial court, and is so pronounced and pernicious that it is not in human nature to forget or disregard its prejudicial effect, then manifestly a mere admonition or any number of admonitions will not suffice to right the wrong done, and the only remedy remaining is to be found in the reversal of the judgment.''

We conclude that the error complained of prevented the defendant from having a fair trial. After a review of the entire cause, including the evidence, we are of the opinion that such error resulted in a miscarriage of justice.

By reason of the foregoing it becomes unnecessary to discuss the appellant's contentions that the trial court erred in permitting the complaining witness to testify because it is alleged she appeared incapable of receiving a just impression of facts respecting which she was examined, or of relating them truly, as required by section 1880 of the Code of Civil Procedure, and in denying appellant's motion to strike such testimony.

The judgment and the order appealed from are reversed and cause remanded for a new trial.

Houser, Acting P. J., and York, J., concurred.