[Crim. No. 6420. In Bank. June 5, 1959.]

THE PEOPLE, Respondent, v. HARVEY MURRAY
GLATMAN, Appellant.

Willard Whittinghill, under appointment by the Supreme Court, for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Jack E. Goertzen, Deputy Attorney General, for Respondent.

GIBSON, C. J.—On the evening of October 27, 1958, defendant was taken into custody when a motorcycle officer traveling on a side road in Orange County discovered him

struggling with Lorraine Vigil for possession of a gun which he had used in an unsuccessful attempt to force her to submit to sexual intercourse. After his arrest defendant confessed that he had killed three women, Judy Dull, Shirley Bridgeford and Ruth Mercado, and he was indicted in San Diego County for the murders of Shirley and Ruth. He pleaded guilty to both counts and waived a jury trial with respect to the degree of the crimes and the penalty. A psychiatrist appointed by the court reported that defendant was sane and that he was able to cooperate fully with his attorney in the presentation of his case. Evidence was received on the issues of degree and penalty, and as to each count the court found defendant guilty of first degree murder and fixed the penalty at death. The appeal from the judgment is before us automatically pursuant to subdivision (b) of section 1239 of the Penal Code.

The statements of defendant, in which he confessed to the two killings with which he was charged, were recorded, and they were received in evidence after a foundation was laid showing that the confessions were made freely and voluntarily, that there had been no promise of reward or immunity, and that no force or violence had been used. A review of the record shows that defendant received a fair and impartial trial, and the evidence in support of the judgment is overwhelming as to both counts.

In March 1958 defendant obtained the name of Shirley Bridgeford from a "lonely hearts club." He telephoned her, giving a false name, and made an appointment to meet her on Saturday night at her home in Los Angeles. Defendant said his purpose was to have sexual intercourse with her, either with consent or by force, and he was prepared to kill her to avoid arrest if he had to use force. He called for her in his car, and, after driving south for a couple of hours, they parked off the highway. Defendant tried to persuade her to have intercourse, and when she refused he showed her a gun and said he would not use it if she obeyed him. She then submitted to him, and while they were still parked he reached the conclusion that he would have to kill her for his own safety. He drove southeast to a desert area in San Diego County where they stopped until the sun came up. In his confession defendant said that he decided to kill Shirley in the same way that he had previously killed Judy Dull. He had persuaded Judy to pose with her hands and feet tied by telling her that he wished to take some pictures suitable as illustrations for

mystery stories, and he killed her while her hands and feet were bound. Similarly he used a desire for pictures as an excuse for tying Shirley's hands and feet without alarming her. After taking several pictures of Shirley, he fastened a rope to the cord around her ankles, pulled it so as to bend her knees, put his knee at the small of her back, looped the rope twice around her neck and pulled as hard as he could for five minutes or so until there did not seem to be any sign of life. At various places on the way back to Los Angeles he threw away Shirley's purse and its contents except about 30 cents in coins, which he kept.

In July 1958 defendant saw a newspaper advertisement stating that Ruth Mercado was available for employment as a model. He called on her in the evening, ostensibly to discuss terms of employment but actually intending to have intercourse with her. When Ruth admitted him to her apartment, he took a gun from his pocket and ordered her to go to her bedroom, where he tied her hands and ankles and gagged her. He then investigated to see how the apartment was laid out and to make sure that there was a back door in the event he had to leave quickly. On his return he told her that he was going to untie her and have intercourse, and he warned her "not to do anything foolish." Afterward he asked Ruth if she had any money and in response to her directions found $20 or $25 in bills which he put in his pocket. About midnight he tied her hands behind her back, put a coat over her shoulders to hide her hands and arms, guided her to his car and drove her southeast from Los Angeles toward the desert in San Diego County. During the following day, which was spent near the desert, defendant took five or six pictures of Ruth, with her hands and feet tied, in poses similar to those in the pictures he previously took of Shirley. Before it got dark, sometime after 9 o'clock, he decided that it was too risky to take Ruth back to Los Angeles and that he would kill her. Later, for the asserted purpose of taking some flashlight pictures, he had her pose again with her hands and feet tied. Defendant then killed her by using a piece of rope from her ankles to bend her legs back, putting his knee in the small of her back, looping the rope twice around her neck, and pulling it as tight as he could for about five minutes. He disposed of most of Ruth's belongings at various places along the highway as he drove back to Los Angeles, but he kept about $10 that was in her purse, a wristwatch, and a few personal items such

as a wallet with identification papers and some articles of clothing.

After defendant's arrest he took police officers to the places in San Diego County where he had killed Shirley Bridgeford and Ruth Mercado, and the officers, following his directions, found the remains of the two victims. An officer acting under a search warrant visited defendant's apartment and obtained a metal tool box that contained Ruth's billfold, some of her clothing, and the photographs which defendant took of Shirley and Ruth when he had them pose in the desert with their hands and feet tied.

■ Evidence was also received regarding the circumstances surrounding the killing of Judy Dull and the Lorraine Vigil incident. No objection was made to the introduction of this evidence, and defendant cannot now question the propriety of its admission. (*People* v. *Feldkamp,* 51 Cal.2d 237, 241 [331 P.2d 632].) ■ Moreover, the evidence was properly admitted with respect to both the degree of the crimes and the penalty. The facts of the Dull case were similar and in many respects identical with those relating to Shirley and Ruth, and it was shown that defendant was following substantially the same procedure with Lorraine Vigil when his attempt to have intercourse was interrupted by the arrival of a police officer. The evidence of the other similar offenses would have been admissible on the issue of guilt to show defendant's motive and intent (*People* v. *Coefield,* 37 Cal.2d 865, 869-870 [236 P.2d 570] ; *People* v. *Peete,* 28 Cal.2d 306, 314-317 [169 P.2d 924] ; *cf. People* v. *McCaughan,* 49 Cal.2d 409, 421-422 [317 P.2d 974]), and it was likewise admissible on the issue of the degree of the crime to which he had pleaded guilty. The evidence of the other crimes was admissible in the proceeding to determine the penalty under section 190.1 of the Penal Code, which provides that any evidence concerning the commission of the crime that is admissible in the trial determining the guilt of the defendant may be admitted on the issue of penalty.

We find no error in the record, and the judgment is affirmed.

Shenk, J., Traynor, J., Schauer, J., Spence, J., McComb, J., and Peters, J., concurred.