[Crim. No. 3847.   First Dist., Div. One.   July 7, 1961.]

THE PEOPLE, Respondent, v. WILLIAM M. JAMES, Appellant.

William R. Edgar, under appointment by the District Court of Appeal, for Appellant.

Stanley Mosk, Attorney General, Arlo E. Smith and Robert R. Granucci, Deputy Attorneys General, for Respondent.

DUNIWAY, J.—Willie James was found guilty, by a jury, of robbery in the second degree (Pen. Code, § 211), and he appeals from the judgment of conviction and the order denying his motion for a new trial. Below, he was represented by the public defender; here, he is represented by court-appointed counsel. He claims prejudicial error in two respects: (1) that the prosecution improperly offered evidence of another robbery, purportedly to show common scheme and design, which error was not cured by an admonition to the jury, and (2) that evidence as to a prior misdemeanor conviction was improperly received and made the basis for argument by the prosecutor. We conclude that the judgment should be affirmed.

It is not contended that there was insufficient evidence to sustain the verdict. Briefly, that evidence shows that on February 20, 1960, appellant, together with one Matthew (a codefendant) and perhaps a third man, assaulted one Marasco and took from him a wallet containing 10 dollars and a coin purse containing five dollars. The details of the assault were recited by Marasco, and in part by one Henson, who saw it in progress and pulled appellant away. Henson also saw appellant and Matthew, a little later, with the wallet, which was in appellant's hand. It was found near the scene of the assault, empty. The purse was not recovered, and neither defendant had the money on him when arrested a short time after the assault. No witness actually saw the removal of

the wallet or purse from the person of Marasco, but the latter was positive in his testimony that he had them on his person at the time of the assault and that they were missing immediately afterward. Both Marasco and Henson identified appellant as the one who attacked Marasco from the front, and Matthew as one who simultaneously attacked him from the rear. However, the identification of Matthew was less certain, which probably explains the jury's verdict of not guilty as to him. The evidence is clearly sufficient.

The two matters of which appellant complains are:

*First.* The prosecution called as a witness one Lee, who testified, in substance, that in August 1958, appellant assaulted him and took from his person one cigarette and three and one-half dollars. When the testimony was offered, appellant's counsel objected and demanded an offer of proof, to which the prosecutor replied that the purpose was to show ''common scheme and design.'' The evidence having been received, counsel again objected, and the following occurred: ''THE COURT: . . . All of the witness' testimony will be stricken out and the jury admonished to disregard it. I would be glad to discuss the matter with Counsel in chambers if you want, but —— As a matter of fact, we might as well do it right now.'' In chambers the court indicated that it felt that the testimony was improper, but that an admonition would be sufficient. On returning to the bench, the court did admonish the jury as follows: ''I want again to admonish the jury to completely disregard the testimony of this witness. We have a rule of law that permits the introduction into evidence of what we call similars when they show or tend to show a common plan, scheme or design. Now usually those are limited to a person who writes a series of bad checks or so-called bunco games where somebody has defrauded somebody of money and things of that sort. In crimes of what we term generally crimes of violence, the only time in which we ever allow evidence of so-called similars is when there is a certain plan or scheme or design, such as bank robberies where one person comes in and presents some note or something to the teller, and the other goes to some other part, and so on. It has some tendency to show that it was all a part of a common plan, scheme and design. So as best I can, and I will not go on any further, I will ask you to erase the testimony of this last witness from your minds.'' The People then rested.

*Second.* Defendant took the stand, and during his cross-examination he was shown the wallet. We set out the colloquy

that ensued: ''Q. Did you ever have this wallet in your hands? A. (Shaking head negatively.) Q. Isn't it a fact that you took a $5-bill out of this wallet? A. I haven't took $5-bill out of no wallet. I haven't had a wallet in my hand since —— it wasn't a wallet; it was Ascot —— since 19 and 57. Q. Your testimony is that you haven't had a wallet in your hand since 1957? A. That is right. Q. You are sure of that? A. I'm positive of it. Q. You and I have met in court before, haven't we, Willie, down in Municipal Court? A. That's a sure thing. Q. Wasn't it on the 21st of July of 1959? A. Joe Lewis and I? Q. July of 1959, the 21st? A. That's right. Q. That's the day we met in court, wasn't it? A. That's right, Joe Lewis and I. Q. That's right. You and Joe Lewis. A. That's correctly. Q. Didn't that arise out of a charge on the 4th of April of 1959 where you were seen by two policemen, Joe Lewis and another fellow, with a wallet in your hands? A. Me and Joe Lewis and Chile was standing in the door drinking a bottle of wine on 7th and Clay, and the officer jumped out of the car and kicked the wallet over to us and told us 'One of you pick it up.' I remember; I remember that I got a pretty good going over behind because I wouldn't pick it up. Q. Wasn't it a fact that you had that wallet in your hand at the time and the officer stopped and arrested you? A. I did not. And I wouldn't have took that going-over that I did, that working-over, if I had of picked it up, but I wouldn't pick it up. Q. Weren't you convicted of stealing that wallet from a man's house? A. I was found guilty by the Judge. Q. Fined? A. Yes. But nobody saw me go in the place; nobody saw me coming out; and I am two blocks from the place, if I make no mistake. Q. Well, did you go in? You say no one saw you go in or out. Did you? A. No, I didn't; don't even know the guy.''

Appellant argues that each of these incidents was improper and that together they constitute misconduct so serious as to require a reversal. We do not agree. The case against appellant was a strong one. There is a presumption that the jury followed the admonition of the court, as to the testimony of Lee. (*People* v. *Carner,* 144 Cal.App.2d 687, 692 [301 P.2d 623] ; *People* v. *Pearson,* 111 Cal.App.2d 9, 21 [244 P.2d 35] ; *People* v. *Young,* 25 Cal.App.2d 148, 156 [77 P.2d 271].) Where the proof of guilt is not clear and convincing, and where the incompetent evidence goes to the main issue, an admonition has been held insufficient to cure the error. (See *People* v. *McKelvey,* 85 Cal.App. 769 [260 P. 397]; *People* v. *Cavallero,* 178 Cal.App.2d 5 [2 Cal.Rptr.

687].) Such is not the case before us. A careful review of the entire record convinces us that, if the testimony of the witness Lee had not been offered, it is not reasonably probable that a result more favorable to appellant would have been reached. (See *People* v. *Watson,* 46 Cal.2d 818, 837 [299 P.2d 243]; Const., art. VI, § 4½; *People* v. *Cavallero, supra,* at p. 13.) It must be remembered, also, that the able and experienced trial judge considered the matter on motion for new trial and denied the motion. (*People* v. *Pearson, supra,* 111 Cal.App.2d 9, 21.)

No doubt it would have been better practice for the court to demand an offer of proof, out of the presence of the jury, before receiving the Lee testimony (*People* v. *Terry,* 180 Cal.App.2d 48, 53-54 [4 Cal.Rptr. 597]), particularly when, as here, the proof offered relates to other crimes. We are admonished by the Supreme Court that such evidence should be received with "extreme caution," an admonition with which we heartily agree. (*People* v. *Newsom,* 37 Cal.2d 34, 47 [230 P.2d 618].) It does not follow, however, that what was done here requires a reversal.

There was no error in the examination of the defendant as to the other wallet. He himself "opened the door" by his assertion "I haven't had a wallet in my hand since . . . 19 and 57." Moreover, there was no objection to the questions. (*People* v. *Feldkamp,* 51 Cal.2d 237, 241 [331 P.2d 632]; *People* v. *Glatman,* 52 Cal.2d 283, 286 [340 P.2d 8].) The jury could infer, in spite of his denials, that appellant did have a wallet in his hand in 1959, and the prosecutor could properly refer to the matter in his argument to the jury. (*Cf. People* v. *Stevens,* 186 Cal.App.2d 772 [9 Cal.Rptr. 217]; *People* v. *Dotson,* 46 Cal.2d 891, 898 [299 P.2d 875]; *People* v. *Lindsey,* 90 Cal.App.2d 558, 565-566 [203 P.2d 572].)

Affirmed.

Bray, P. J., and Tobriner, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 30, 1961.