Filed 12/24/24  P. v. Fitzpatrick CA1/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>JAMES FITZPATRICK,<br><br>Defendant and Appellant. | A167258<br><br>(Contra Costa County<br>Super. Ct. No. 02-335530-2) |

The jury convicted James Fitzpatrick of multiple offenses arising from a fatal car crash in which Fitzpatrick collided with another vehicle in an intersection.  He contends the trial court erred in denying a mistrial after one of the investigating officers, in violation of an in limine ruling, briefly stated his conclusion that one of the causes of the collision was a violation of a red-light traffic signal.  Fitzpatrick further contends the court violated Penal Code[1] section 654 in imposing a multiple victim enhancement.  The People concede the sentencing error and agree a full resentencing is warranted.  We affirm Fitzpatrick's convictions but remand for a full resentencing.

---

[1] Undesignated statutory references are to the Penal Code.

# I. BACKGROUND

## A. The Collision

The crash occurred around 2:00 a.m. on June 24, 2021, at an intersection in Richmond. Fitzpatrick was driving with Juantine Jones, Jones's son, Jihad Seymour, and Seymour's cousin as his passengers. Seymour testified that the "general feeling in the car" prior to the collision was "loud and fun, the music was on," and they were drinking alcohol and enjoying themselves.

The collision happened when Fitzpatrick's vehicle and another car driven by Gary Styles converged in an intersection. One of the responding officers described the intersection as a "T intersection," where South 37th Street "dead ends" into Carlson Boulevard. The intersection was controlled by a traffic light. The officer testified that the speed limit on South 37th Street was 25 miles per hour, while the speed limit on Carlson Boulevard was 35 miles per hour. He characterized the traffic in that area at approximately 2:00 a.m. as "sporadic."

When the officer arrived at the scene of the crash, he observed a white car with "major front-end damage and full air bag deployment" and a black sedan with "major left-side damage and air bag deployment." Fitzpatrick identified himself as the driver of the white car. He told the officer that he had the green light and the other car struck him when he entered the intersection. Fitzpatrick initially estimated his speed to be around 50 miles per hour at the time of the collision, but he later claimed his speed was about 30 miles per hour.

The officer found Jones in the rear seat of Fitzpatrick's car "fading in and out of consciousness" with a "bloody head wound." She was taken to the hospital and discharged later.

2

Styles was the black car's sole occupant. He "appeared to have a bloody head wound, seemed to be in and out of consciousness, and did not communicate with" officers. Emergency responders had to cut through the roof of the car to reach him. Styles ultimately died from his injuries.

## B. Fitzpatrick's Intoxication

One of the responding officers observed that Fitzpatrick "had a moderate odor of an alcoholic beverage, and his eyes were glassy and red, bloodshot." After the officer administered field sobriety tests, Fitzpatrick was arrested for driving under the influence and transported to a hospital for a blood test. The blood test revealed that Fitzpatrick's blood alcohol level at the time the test was administered—which was approximately three hours after the collision—was around 0.109 percent.

An expert in forensic alcohol analysis testified at trial that "[m]ost people are significantly impaired at a 0.05 percent" blood alcohol level. She testified that a significantly impaired person would generally have a decreased "ability to divide their attention" and a slowed reaction time. She opined that a person with a 0.109 percent blood alcohol level would be impaired for purposes of driving.

## C. Trial Evidence Relating to the Causes of the Crash

No eyewitness testimony was presented at trial regarding the cause of the crash. Seymour, as the only person involved in the collision who testified at trial, said he did not see what happened; he only felt the impact.

Officer Pagaling testified regarding his investigation of the collision. He identified the area where the two cars initially collided as near the center of the intersection. At the site of the collision, he did not observe any road conditions that would have contributed to or caused the crash, nor did he see any major obstruction that would have limited someone's ability to see the

3

intersection. He opined that Styles was making a left hand turn into the intersection from South 37th Street when Fitzpatrick struck his car. The "majority of damage" was inflicted on Styles's car because Styles was "moving at a much lower rate of speed" and his car was hit on the side. An inspection of Fitzpatrick's car revealed no mechanical issues that would have contributed to the collision.

Another officer testified about crash data retrieved from the event data recorder in Fitzpatrick's car. The officer said the data showed that five seconds before impact, the car was traveling at 68 miles per hour and was slowing down. But by one second before impact, the car had accelerated again, reaching 71 miles per hour. At that point, the brakes were applied and the car swerved left. At one-half second before impact, the car had slowed to 62 miles per hour and had begun swerving to the right. At the point of impact, the driver was "slamming" the brakes, and the car was traveling at 47 miles per hour.

The officer testified that a "typical[]" yellow light lasts three seconds. He agreed that it would be a "safe presumption" that a street with a speed limit of 35 miles per hour would have a three-second yellow light. The prosecution presented the officer with a hypothetical scenario in which the driver of the car initially braked as he approached an intersection and the light turned yellow, but then quickly accelerated towards the intersection before slamming on the brakes upon seeing another car enter the intersection. The officer opined that the crash data was consistent with the hypothetical.

The forensic pathologist who conducted Styles's autopsy testified that he died of "multiple blunt force injuries," which were "consistent with . . . having been in the driver seat of a vehicle that was subsequently T-boned by

4

another vehicle at a high rate of speed."  A search of Styles's car revealed no "indications of alcohol or drug use inside the vehicle."

### D. Procedural History

Fitzpatrick was charged with gross vehicular manslaughter while intoxicated, killing Styles (§ 191.5, subd. (a); count 1); driving under the influence of an alcoholic beverage causing injury to Jones (Veh. Code, § 23153, subd. (a); count 2); and driving with a 0.08 percent blood alcohol content causing injury to Jones (Veh. Code, § 23153, subd. (b); count 3).  With respect to counts 2 and 3, the information alleged that Fitzpatrick personally inflicted great bodily injury upon Jones (§ 12022.7, subd. (a)), personally inflicted great bodily injury upon Jones, resulting in Jones becoming comatose due to brain injury and suffering paralysis (§ 12022.7, subd. (b)), and proximately caused bodily injury and death to Jones and Styles in violation of Vehicle Code section 23558.

The jury found Fitzpatrick guilty as charged on all counts.  The jury also found true the allegations except the allegation for counts 2 and 3 that he personally inflicted great bodily injury upon Jones, resulting in her becoming comatose due to brain injury and suffering paralysis.  (§ 12022.7, subd. (b).)  The trial court sentenced Fitzpatrick to an aggregate term of nine years in prison.

## II.  DISCUSSION

### A. The Mistrial Motion

#### 1. Additional Background

Before trial, Fitzpatrick's counsel moved in limine for an order excluding "testimony that . . . Fitzpatrick violated vehicle code section 21453A on the date of the incident" because no discovery had been provided to the defense on the matter.  Vehicle Code section 21453,

5

subdivision (a) is the statute that requires drivers to stop and remain stopped at a red light. At the hearing on the motion, the trial court asked the prosecutor whether he was planning to elicit from the officers who investigated the collision testimony stating "conclusively" that Fitzpatrick ran a red light on the night of the collision. The prosecutor responded that he was only going to ask the officers whether Fitzpatrick's "driving pattern would be consistent" with running a red light. He further noted that there were no percipient witnesses of the red-light violation.

The trial court granted the motion, stating that it was "not going to allow a witness to say definitively that [Fitzpatrick] ran a red light. . . . We don't know. [¶] . . . [I]t would be unfair to say definitively that he actually ran the red light." The court warned counsel to "be very careful with the phrasing. The officers are not allowed to say, 'In my opinion, he was attempting to beat a red light' absent some evidence that the light was, in fact, changing." But, "the officers can say the driving pattern is consistent with someone trying to beat a yellow light."

On the second day of trial, during the prosecution's direct examination of Officer Pagaling, the following exchange occurred:

"Q: So looking at [an overhead photograph of the intersection] and kind of based on your review of the measurements that you took, the observations you made as it related to the roadway, the resting area of each of the vehicles, and kind of just your general investigation, were you able to determine what happened to cause this collision?

"A: You're saying the primary collision factor?

"Q: Yes.

"A: Yes. Later on we determined what the primary collision factor was.

6

"Q: What was that?

"A: It was a violation of Vehicle Code section—
CVC 23152[, subdivision ](a) and (b), which is driving under the influence, *with a secondary cause of violation of a red traffic signal light*.

"[Defense counsel]: Objection. Discovery.

"The Court: Okay. Will the parties please approach?" (Italics added.)

After a sidebar with counsel, during which the prosecutor acknowledged he did not advise Officer Pagaling of the trial court's in limine ruling, the court excused the jury for a 15-minute recess. Outside the presence of the jury, the court admonished the prosecutor and said it was going to sustain the objection for foundation.

The trial court subsequently admonished the jury as follows: "[Defense counsel's] objection will be sustained on the grounds of foundation, and the testimony will end—the answer, 'It was a violation of Vehicle Code section 23152[, subdivision] (a) and [(b)] which is driving under the influence' will stand, and the balance of that answer will be stricken. [¶] And ladies and gentlemen, just as a reminder, when the Court strikes testimony from the record, you may not consider it for any purpose. It's as though you didn't hear it."

The following day, Fitzpatrick moved for a mistrial on the ground that the admonition to the jury not to consider Officer Pagaling's testimony that a secondary cause of the collision was a red-light violation was insufficient. He argued that the prejudice to him was "high and incurable" because the defense "opened on the fact that no one would be able to testify that [he] ran a red light on the night of the incident," and Officer Pagaling was "the one witness in this trial that [was] putting the collision together for the jury." The prosecution opposed the motion.

7

The trial court denied Fitzpatrick's request for a mistrial, explaining that the stricken testimony "was brief and was not so prejudicial that it will deprive the defendant of a fair trial. The Court admonished the jury right away, and the Court is satisfied that its admonition to the jury to disregard the testimony was sufficient to cure the violation."

2.    Analysis

Fitzpatrick contends the trial court erred in denying his motion for mistrial because the issue of who had the red light was central to his defense. His defense, as indicated by his counsel's opening statement, was that the prosecution could not prove the elements of causation and gross negligence for the offense of gross vehicular manslaughter while intoxicated because none of the witnesses "will be able to tell" the jury that "Fitzpatrick ran a red light." He argues that Officer Pagaling's improper testimony, which occurred on the second day of trial, irreparably damaged his counsel's credibility and undermined his defense. We disagree.[2]

"A motion for mistrial is directed to the sound discretion of the trial court." (*People v. Jenkins* (2000) 22 Cal.4th 900, 985.) Our Supreme Court has explained that " '[a] mistrial should be granted if the court is apprised of prejudice that it judges incurable by admonition or instruction. [Citation.] Whether a particular incident is incurably prejudicial is by its nature a speculative matter, and the trial court is vested with considerable discretion in ruling on mistrial motions.' " (*Id.* at pp. 985–986.) " 'It is only in the

---

[2] Although Officer Pagaling did not in fact state that it was Fitzpatrick who violated the red-light statute, the parties and the trial court seemed to infer from his testimony that he was referring to Fitzpatrick. Even assuming the jury would also likely conclude the objectionable statement referred to a violation committed by Fitzpatrick (he was, after all, the one on trial), we disagree that the court erred in denying the mistrial motion for the reasons set forth below.

8

exceptional case "that the improper subject matter is of such a character that its effect . . . cannot be removed by the court's admonitions." ' " (*People v. McNally* (2015) 236 Cal.App.4th 1419, 1429, called into doubt on another ground by *People v. Fay* (2024) 101 Cal.App.5th 767, 775–776.)

As a preliminary matter, we decline to review Fitzpatrick's claim under the de novo standard of review, as he urges us to do. "Whether a particular incident is incurably prejudicial requires a nuanced, fact-based analysis." (*People v. Chatman* (2006) 38 Cal.4th 344, 369–370.) We will not substitute our judgment for that of the trial judge, who was in a better position to judge in the first instance the level of prejudice resulting from the improper testimony being presented to the jury.

Applying the more deferential standard of review, we conclude there is no basis for disturbing the trial court's exercise of its considerable discretion in denying a mistrial. Officer Pagaling's statement—one line amidst nearly two-hundred pages of testimony—was brief and isolated.[3] (See *People v. Bolden* (2002) 29 Cal.4th 515, 555 [fleeting reference to parole office did not require mistrial]; *People v. Bonin* (1988) 46 Cal.3d 659, 687–690 [isolated instance of prosecutor eliciting from witness inadmissible evidence of defendant's confession to other murders was not prejudicial in context of

---

[3] Fitzpatrick appears to suggest the improper statement was not isolated, but the portion of the prosecution's closing argument he cites does not explicitly refer to Officer Pagaling's testimony. Rather, when the cited comment is viewed in context, it is apparent that the prosecutor was relying on the crash data to support its theory that Fitzpatrick was attempting to beat a yellow light prior to the collision. (See *People v. Lopez* (2008) 42 Cal.4th 960, 971 [prosecutor's comments must be evaluated in context].) Fitzpatrick points to no part of the record showing that the prosecution attached any significance to the objectionable statement.

"lengthy and otherwise well-conducted trial"], overruled on other grounds by *People v. Hill* (1998) 17 Cal.4th 800, 823, fn. 1.)

Further, defense counsel immediately objected to the statement, a brief recess was taken, and the trial court swiftly admonished the jury to disregard the statement. Under those circumstances, the jury likely understood from the beginning that the statement's legitimacy was in doubt. As our Supreme Court observed with respect to the effect on the jury of an improper question, it is doubtful the jury gave this isolated statement much weight: "The jury heard the objection at the time of the question and knew a hearing was held regarding it, so it understood from the outset that the propriety of the question was in doubt. The later admonition confirmed that the jury should not consider the question. We therefore have no basis on which to believe it gave the question any weight." (*People v. Riel* (2000) 22 Cal.4th 1153, 1198.)

Additionally, the trial court again instructed the jury at the close of evidence to disregard any testimony it had stricken. It also instructed the jury that they alone were to decide "what happened" according to the evidence presented at trial. We assume the jury followed the court's admonitions and prejudice was avoided. (See *People v. Bennett* (2009) 45 Cal.4th 577, 612.)

Fitzpatrick contends the trial court's admonitions were insufficient and could not have cured the prejudice resulting from the objectionable statement. In so concluding, he relies on the following language in *People v. Hardy* (1948) 33 Cal.2d 52 (*Hardy*): " 'It has also been held that in certain cases where the incompetent evidence goes to the main issue and where the proof of defendant's guilt is not clear and convincing, that the error in admitting the incompetent evidence cannot be cured by striking out and instructing the jury to disregard that evidence.' " (*Id.* at p. 61.)

The *Hardy* court was quoting *People v. McKelvey* (1927) 85 Cal.App. 769, 771, in which the evidence was in "sharp conflict" such that the case turned on the credibility of the witnesses, and yet the trial court allowed five witnesses "to testify to defendant's bad moral character, although he had not put his character in issue." (*Hardy, supra*, 33 Cal.3d at p. 61.) In *Hardy*, the improper evidence was what the court characterized as "a confession [by the defendant] for which no foundation had been laid." (*Ibid.*) The trial court had allowed a deputy to testify as to what the defendant had said, but then determined that the evidence should not have been admitted because no foundation had been laid. In striking the testimony and instructing the jury to disregard it, the court reread the very same testimony to the jury. (*Ibid.*) Under those circumstances, the *Hardy* court concluded "it was extremely unlikely that the jury could wholly reject the evidence and completely disregard it in their deliberations." (*Id.* at p. 62.)

The testimony being challenged here is not of the same nature as the erroneously admitted evidence discussed in *McKelvey* or *Hardy*. The objectionable statement was not "unduly emphasized" by the trial court (*Hardy, supra*, 33 Cal.2d at p. 62), and it did not concern the " 'exceptional circumstance' " of a defendant's confession being improperly introduced (*People v. Navarrete* (2010) 181 Cal.App.4th 828, 836, 834–835; *People v. Neal* (2003) 31 Cal.4th 63, 86 [evidence of a defendant's confession is an " ' "evidentiary bombshell which shatters the defense" ' "]), or of references to the defendant's criminal history in a "close case" that turned on witness credibility (*People v. Allen* (1978) 77 Cal.App.3d 924, 935; *People v. Roof* (1963) 216 Cal.App.2d 222, 225–226 ["Among the facts which are generally considered to be incapable of obliteration from the minds of the jurors by the

11

court's direction is the fact that the accused has been previously charged with or convicted of a crime."]).

Moreover, while the evidence supporting the prosecution's theory that Fitzpatrick ran a red light was not particularly strong, the prosecutor also emphasized in his rebuttal to defense counsel's closing statement that "Styles's driving pattern does not change . . . Fitzpatrick's gross negligence" because Fitzpatrick decided to "hurtle his . . . vehicle down Carlson Boulevard at 70 miles per hour into an intersection." Under the latter theory, the evidence of Fitzpatrick's guilt was clear and convincing. The jury heard evidence that he accelerated to 71 miles per hour as he entered an intersection in a residential neighborhood where drivers' average speed was only 37 miles per hour; that he had a blood alcohol level beyond the level at which most people are significantly impaired; that Styles was driving at "a much lower rate of speed" and was near the center of the intersection at the time of the collision; that Fitzpatrick's view of the intersection was unobstructed yet he did not brake until the last second; and that Styles had extensive injuries—several of which were likely fatal on their own—that were consistent with being hit by a car going at a high rate of speed. Taken together, this evidence shows that even if Styles had the red light at the time of the collision, Fitzpatrick created a situation where another driver's error could foreseeably result in a major accident with fatalities. (See *People v. Marlin* (2004) 124 Cal.App.4th 559, 570 [discussing standard for causation], disagreed with on another ground by *People v. Voit* (2011) 200 Cal.App.4th 1353, 1370.) Further, the jury could have concluded that a reasonable person would have known that acting in the way that Fitzpatrick did would create such a risk. (CALCRIM No. 592 [defining "gross negligence"].) For these same reasons, any error in denying Fitzpatrick's motion for a mistrial was

12

harmless. (See *People v. Garcia* (2022) 83 Cal.App.5th 240, 248–249 [standard for prejudice where no constitutional error is found].)

Fitzpatrick contends the jury instructions "would make finding gross negligence unlikely where the record indicated no other reckless or negligent actions" on his part other than speeding while intoxicated. He points to the part of the jury instruction on gross vehicular manslaughter while intoxicated that stated, "The combination of driving a vehicle while under the influence of an alcoholic beverage and violating a traffic light is not enough by itself to establish gross negligence." Fitzpatrick's argument improperly assumes, however, that the jury disregarded the rest of the instructions, which defined "gross negligence" and required the jury to consider "any other relevant aspects of [Fitzpatrick's] conduct" in evaluating whether he acted with gross negligence, including his level of intoxication and the way he drove, factors that support his guilt. (See *People v. Adcox* (1988) 47 Cal.3d 207, 253 [jurors are presumed to follow the instructions given them].)[4]

We also disagree with Fitzpatrick's argument that the trial court's admonition to the jury to disregard the objectionable statement was too vague to be effective. By instructing the jury that Officer Pagaling's

---

[4] Fitzpatrick similarly speculates that the jury would be unable to follow the trial court's admonishment not to consider the objectionable statement because the officer who testified after Officer Pagaling testified about a prior red-light violation committed by Fitzpatrick. However, any remote possibility that the latter evidence "aggravated" the prejudice resulting from the improper statement was cured by the trial court's admonition to the jury not to use evidence of the prior violation for any purpose other than to evaluate "whether a reasonable person in the same or similar situation as the defendant acted so differently from the way an ordinarily careful person would act in the same situation." The court specifically instructed the jury not to consider it as evidence that Fitzpatrick ran a red light on the date of the collision or that he had a predisposition to commit a traffic offense.

13

statement that the primary collision factor was driving under the influence will stand but the "balance of that answer will be stricken," the court made clear that Officer Pagaling's conclusion regarding a red-light violation was to be disregarded by the jury. While the court could have elaborated on the basis for striking the testimony, the jury could reasonably understand that the court agreed with defense counsel that the statement was improper and should be disregarded. Since the court was in the best position to judge the jury's reaction to the impermissible testimony, we will not speculate, as Fitzpatrick does, as to whether the jury "could not help but have wondered why that testimony was being stricken."

Finally, we reject Fitzpatrick's claim that reversal is required because the jury could have concluded from the improper statement that defense counsel was hiding evidence or was ignorant of the facts of the case. Even if the jury, at the time of Officer Pagaling's testimony, was able to recall defense counsel's assertion in opening statements that no one would be able to say that Fitzpatrick ran the red light, the jury knew Officer Pagaling was providing his opinion on causation as an investigating officer, and it became clear through the events following the objectionable statement that the statement was improper, as explained above. Considering those circumstances, the brief and isolated nature of the comment, the trial court's multiple admonitions, and the investigating officers' otherwise lengthy testimony, it is highly unlikely the objectionable statement prejudiced the jury against Fitzpatrick or his defense counsel. (See *People v. Bonin, supra*, 46 Cal.3d at pp. 687–690; *People v. Mendoza* (2007) 42 Cal.4th 686, 704 ["the misconduct was not prejudicial, as his comments were brief and he did not return to the point"].)

We therefore conclude the trial court properly exercised its considerable discretion in denying Fitzpatrick's motion for a mistrial. Even if the court erred in denying the motion, it was not reasonably probable that a result more favorable to Fitzpatrick would have been reached absent the objectionable statement.[5] (See *People v. James* (1961) 193 Cal.App.2d 595, 599.)

## B.      *Sentencing Enhancements*

For count 3, driving with driving with a 0.08 percent blood alcohol content causing injury to Jones (Veh. Code, § 23153, subd. (b)), the jury found true an enhancing allegation under section 12022.7, subdivision (a), and an enhancing allegation under Vehicle Code section 23558.

Section 12022.7 provides in part, "Any person who personally inflicts great bodily injury on any person other than an accomplice in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment in the state prison for three years." (*Id.*, subd. (a).)

Vehicle Code section 23558 provides in part, "A person who proximately causes bodily injury or death to more than one victim in any one instance of driving in violation of Section 23153 . . . shall, upon a felony conviction, and notwithstanding subdivision (g) of Section 1170.1 . . . , receive

---

[5] For similar reasons, we reject any argument that the prosecutor committed prejudicial misconduct in violation of Fitzpatrick's state and federal due process rights. It is undisputed that the prosecutor should have, but did not, warn Officer Pagaling against testifying that Fitzpatrick ran a red light on the night of the collision. But Officer Pagaling's testimony did not " ' " ' "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process," ' " ' " nor was it " 'reasonably probable that a result more favorable to [Fitzpatrick] would have been reached without the misconduct.' " (*People v. Wallace* (2008) 44 Cal.4th 1032, 1070–1071.)

15

an enhancement of one year in the state prison for each additional injured victim."

The trial court designated count 3 as the principal term and imposed the upper term of three years, plus a consecutive three-year term for the section 12022.7, subdivision (a) enhancement and a consecutive one-year sentence for the Vehicle Code section 23558 enhancement. The victim named in the first enhancing allegation was Jones, and the victims named in the second enhancing allegation were Jones and Styles. Additionally, the court sentenced Fitzpatrick to a consecutive two-year term for count 1, gross vehicular manslaughter while intoxicated. (§ 191.5, subd. (a).)

Fitzpatrick maintains the trial court violated section 654 by not staying the sentence for the Vehicle Code section 23558 enhancement attendant to count 3. Relying on *People v. Elder* (2017) 11 Cal.App.5th 123 (*Elder*), he asserts this was error because the enhancement was based on him causing injury to Styles, but he was already punished for this act by the imposition of a two-year term for gross vehicular manslaughter while intoxicated. The People concede the trial court violated section 654 but for a different reason in that imposing sentences for both the section 12022.7 enhancement and the Vehicle Code section 23558 enhancement punishes Fitzpatrick for the same act of injuring Jones. The concession is well-taken.[6]

---

[6] Although Fitzpatrick's counsel did not object at sentencing, section 654 error results in an unauthorized sentence, and thus Fitzpatrick can raise the error on appeal for the first time. (See *People v. Johnson* (2015) 234 Cal.App.4th 1432, 1457, fn. 12.) We therefore do not address Fitzpatrick's claim that his counsel provided ineffective assistance of counsel when she failed to object to the section 654 error. And because we are remanding for full resentencing, we also do not address his other arguments regarding forfeiture and ineffective assistance of counsel because they all pertain to alleged sentencing errors.

Section 654 provides in part, "An act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision." (*Id.*, subd. (a).)  Section 654 applies to enhancements if the specific sentencing statute does not address whether multiple sentence enhancements may be imposed.  (*People v. Ahmed* (2011) 53 Cal.4th 156, 161, 164 (*Ahmed*).)  "[W]hen applied to multiple enhancements for a single crime, section 654 bars multiple punishment for the same aspect of a criminal act." (*Id.* at p. 164, italics omitted.)

In *Elder*, the defendant was convicted of two counts of gross vehicular manslaughter while intoxicated, one count of driving under the influence of alcohol causing injury, and one count of driving with a blood-alcohol level of 0.08 percent or more causing injury.  (*Elder*, *supra*, 11 Cal.App.5th at p. 129.)  In connection with the offense of driving under the influence of alcohol causing injury (count 3), the jury found true allegations that the defendant inflicted great bodily injury on three separate victims under section 12022.7, subdivision (a) and inflicted bodily injury on more than one of those victims under Vehicle Code section 23558.  (*Elder*, at p. 129.)  The trial court sentenced the defendant to two years in prison on count 3 and imposed three consecutive three-year terms for the three great bodily injury enhancements for that offense, as well as a two-year term for inflicting bodily injury on multiple victims.  (*Id.* at pp. 129–130.)  The defendant argued that imposition of both a sentencing enhancement under Vehicle Code section 23558 for injuring multiple victims and under section 12022.7, subdivision (a) for inflicting great bodily injury on the same victims violated section 654's prohibition against multiple punishments for the same act.  (*Elder*, at p. 137.)

17

In reviewing the issue, the Court of Appeal first noted it had been addressed in *People v. Arndt* (1999) 76 Cal.App.4th 387, which held "the law did not allow for both a great bodily injury enhancement and a Vehicle Code section 23558 enhancement for the same victims," because that would violate the "statutory proscription against multiple punishments." (*Elder, supra*, 11 Cal.App.5th at pp. 141, 138.) The *Arndt* court reasoned that section 654 "concerns the offender's criminal conduct," and both section 12022.7 and section Vehicle Code section 23558 " 'focus[] on what the defendant did when the current offense was committed.' " (*Arndt*, at p. 396, quoting *People v. Coronado* (1995) 12 Cal.4th 145, 157.)

Because the *Arndt* court had construed a prior version of Vehicle Code section 23558, the *Elder* court considered "whether the amended text of Vehicle Code section 23558 allows for a multiple victim enhancement in addition to a separate great bodily injury enhancement." (*Elder*, *supra*, 11 Cal.App.5th at p. 139.) From a review of the statute's purpose, language, and legislative history, the court determined that the amendment was limited to clarifying that subdivision (g) of section 1170.1 did not prohibit courts from imposing more than a single one-year enhancement under Vehicle Code section 23558. (*Elder*, at pp. 139–140.) The *Elder* court concluded, "Given the expressed [legislative] intent to merely clarify existing law by making 'technical, non-substantive changes,' we cannot agree with the Attorney General that the effect of the 1999 amendment was to change the law in a manner that would allow the Vehicle Code section 23558 multiple victim enhancements to be imposed in addition to great bodily injury enhancements for the same victims." (*Id.* at p. 141.)

The *Elder* court concluded that imposition of the two-year term under Vehicle Code section 23558 violated section 654 because "[b]oth of the

18

enhancements in [the] case—great bodily injury and bodily injury to multiple victims—were imposed based on the same aspect of the crime, namely the injuries inflicted, as opposed to the manner in which the crime was committed, or some other aspect." (*Elder, supra*, 11 Cal.App.5th at p. 142, citing *Ahmed, supra*, 53 Cal.4th at p. 164 [multiple enhancements for the same "aspect" of a crime are barred under § 654].)

That is also the case here. For count 3, the trial court imposed enhancements under both Vehicle Code section 23558 and section 12022.7, subdivision (a) for the same act of causing injury to Jones. Thus, the court imposed "multiple punishment for the same aspect of a criminal act." (*Ahmed, supra*, 53 Cal.4th at p. 164, italics omitted.) We see no reason to depart from the *Elder* court's conclusion that Vehicle Code section 23558 does not permit imposition of multiple victim enhancements in addition to great bodily injury enhancements for the same victims. (*Elder, supra*, 11 Cal.App.5th at p. 141.) Accordingly, the court violated section 654 by imposing consecutive terms for both enhancements.

Under section 654, the court has discretion to choose which enhancement will have a sentence imposed and which will have its sentence stayed.[7] (§ 654, subd. (a); *People v. Aguayo* (2022) 13 Cal.5th 974, 992, fn. 6.)

---

[7] While Fitzpatrick asserted in his opening brief that the trial court was required to strike the Vehicle Code section 23558 enhancement, he seems to have abandoned this claim in his reply. In any event, we find no support for this assertion, which seems to be premised on the assumption that a court cannot punish a defendant for gross vehicular manslaughter while also imposing a multiple victim enhancement for a different offense that involves the same injury to the same victim. Such an assumption seems contrary to the Supreme Court's reasoning in *Ahmed* that "enhancements are different from substantive crimes." (*Ahmed, supra*, 53 Cal.4th at p. 163.) "[E]nhancement provisions do not define criminal acts; rather, they increase the punishment for those acts" and "focus on aspects of the criminal act that

Accordingly, we must remand for the trial court to stay one of the two enhancements imposed for count 3.

We agree with the parties that the matter must be remanded for a full resentencing. (*People v. Buycks* (2018) 5 Cal.5th 857, 893.) Because we must remand for a full resentencing, we need not address Fitzpatrick's arguments that the trial court should have dismissed the Vehicle Code section 23558 enhancement under section 1385 and that the court relied on invalid aggravating factors in imposing the upper term on count 3. On remand, he can advance those arguments and contest any aggravating factors on which the trial court relies in resentencing. (*Buycks*, at p. 893.)

## III.   DISPOSITION

Fitzpatrick's sentence is vacated, and the matter remanded for full resentencing consistent with this opinion. In all other respects, the judgment is affirmed.

---

are not always present and that warrant additional punishment." (*Ibid*, italics omitted.) Applying this reasoning, the *Ahmed* court concluded that section 654 bars multiple punishment for the same "aspect" of a single criminal act. (*Ahmed*, at p. 164.)

LANGHORNE WILSON, J.

WE CONCUR:

HUMES, P. J.

HILL, J.*

A167258
*People v. Fitzpatrick*

---

* Judge of the San Mateo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.